Frank Smith

*v.*

Lincoln Memorial University.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

J. R. KETRON and A. G. SHUMATE, Tazewell, for appellant, Lincoln Memorial University.

HODGES & DOUGHTY, Knoxville, for appellee, Smith.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case under Section 50-901 et seq., T.C.A. The Chancellor granted compensation to the employee for 50% loss of the use of his right leg. The University has appealed and presents two questions to this Court, to wit:

(1)  Lincoln Memorial University being a charitable

educational institution, and not being operated for a profit is not within the provisions of the Workmen's Compensation Law, and,

(2) If the University is liable under the Workmen's Compensation Act then the employee was a casual and not a regular employee.

These questions have been seasonably presented by counsel and able briefs. We have made an extensive study of the matter and now have the case for disposition.

The University at all times during 1955, the year that this accident happened, had in its employ more than five persons. The petitioner was a man 62 years of age and had been a resident of Claiborne County, residing in Harrogate, Tennessee, for that time. His occupation was that of a farmer and of painting and carpentry work. He had been doing painting and carpentry work and farming all of his life. He began working for the University on July 5, 1955 and was working in painting the gymnasium and swimming pool on October 7, 1955 (he had been working continuously since his employment in July) when he was directed to go from one place on the school grounds to do additional painting at another place; and in doing so, while carrying five paint buckets, his foot slipped and his leg doubled back under him injuring his right knee.

He had been working this way during the season for such work, during painting season, for the University for the past 37 years. The University had a maintenance department that did paint work and other general repairs in the upkeep of its buildings and dormitories.

Most of the outside painting was done during the summer and fall months.

The School also maintained certain apartment buildings which they rented to the teachers of the School and three or four of these buildings had been dwelling houses that were rented to teachers. The employee sometimes worked on these rental buildings and apartments and he painted one of the apartment buildings about two days before he fell. This maintenance crew that maintained these school buildings was in charge of a foreman who was employed by the School who in turn had a Mr. Owens in charge of the painters.

Lincoln Memorial University is a charitable educational institution operating under a welfare charter. It gives general courses of instructions as other colleges and universities in its class do in this State.

It is very ably argued on behalf of the University that since it is an eleemosynary institution that it was not the intention of the Legislature to include it or eleemosynary institutions of the kind within the provisions of the Workmen's Compensation Statute. The argument is based upon the fact that it is said that we in Tennessee have adopted the Trust Doctrine exempting charitable institutions from liability upon the theory that gifts for such charitable purposes should be encouraged by every reasonable means and thus these gifts should not go for things not necessarily included in an educational system. The case of *Gamble v. Vanderbilt University*, 138 Tenn. 616, 200 S.W. 510, L.R.A. 1918C, 875, sets forth this Trust Doctrine and this doctrine is said to be well entrenched in our judicial system. It is said that by reason of this fact the need for educated men and women

has become greater year by year and since it was great at the time the case of *Gamble v. Vanderbilt University* was decided that it is far greater now. The argument likewise is that it is a matter of common knowledge and the courts will take judicial notice of the fact that colleges and other charitable institutions are in more need of support and philanthropically minded people now than ever before and that the safety and welfare of this country depend more and more upon college trained men and women.

In our determination of this question and whether or not the Legislature did intend to exempt eleemosynary institutions, it is necessary for us to look at the provisions of the statute enacting the Workmen's Compensation Law into the law of this State. Section 50-902, subsection (a), T.C.A. defines an employer as:

"(a) 'Employer' shall include any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay. If the employer is insured, it shall include his insurer, unless otherwise herein provided."

This section obviously does not make an exemption in favor of an eleemosynary institution. Under the facts here we have a university employing more than five persons each during the summer and fall months in painting and doing general repair work around the buildings.

Section 50-903, T.C.A., provides:

"Every employer and every employee except as herein stated, shall be presumed to have accepted the provisions of the Workmen's Compensation Law

respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound, thereby, unless he shall have given, prior to any accident resulting in injury or death, notice to the contrary in the manner herein provided.''

This Section has reference to employers included within the statute and not to such as are expressly exempt from the Statute by Code Section 50-906, T.C.A., hereinafter to be referred to. *Bohannon v. Putnam County*, 157 Tenn. 170, 7 S.W.2d 58.

Those that are not covered, that is the employments that are not covered, are as set out in Section 50-906, T.C.A., any common carrier, any person whose employment is casual, domestic servants and employers thereof, and in cases where there are less than five persons with exceptions as provided in the Act and lastly State of Tennessee and counties and municipal corporations with certain provisions. In none of these excepted employments and employers is an eleemosynary institution, such as the appellant herein.

It seems plain to us that under the first Code Section quoted above that the University here is an employer, and then in view of the following section which is quoted it is provided that every employer is presumed to have accepted the provisions of the Act unless they give notice otherwise as provided by law of electing not to come under the Act. No election was exercised by the University.

It seems to us that the maxim, *expressio unius est exclusio alterius,* is applicable here. This maxim em-

bodies a useful rule of construction, and is frequently employed to determine the real purview of legislative enactments.

Numerous cases applying this maxim will be found in 35 C.J.S., at page 283, and 284. It is said among other things that:

"The maxim is sensible and useful in logic and law. Matter of Connor's Will, 1 N.Y.St. [Rep.] 144, 148."

It seems to us if we apply the commonsense logic of this maxim that we must conclude that if the Legislature intended to exclude eleemosynary institutions from the workings of the Workmen's Compensation Law then they would have said so. When by giving the definition of an "employer", as they have done, and then making certain exclusions, not naming institutions of the kind here considered, clearly we think they intended to include institutions of this kind.

Some States have expressly excluded charitable employers under their Acts. In Larson on Workmen's Compensation, Vol. 1, Sec. 50-42, the author says in reference to the question here involved:

"Although the cases are sharply divided, a definite majority have held such employers to be subject to the typical compensation act, containing the usual non-committal definition of employer, and also the usual clause excluding employment that is casual and not in the trade or business of the employer.

"The basic reason for this holding is very simple and straight-forward. It is that the compensation act expressly covers all employers, then specifically ex-

· empts such employers as it wants to exempt, so that if · charitable employers are not expressly exempted the only possible conclusion is that they are covered.''

We expressly adopt and approve this reasoning as clearly applicable under our statute.

The University relies particularly on cases of *Zoulalian v. New England Sanatorium & Benevolent Ass'n*, 230 Mass. 102, 119 N.E. 686, L.R.A.1918F, 185, and the South Carolina case of *Caughman v. Columbia Y.M.C.A.*, 212 S.C. 337, 47 S.E.2d 788, as setting forth the rule that should be followed in this State because of our holding as set forth in *Gamble v. Vanderbilt University*, supra. These cases, that is, the Massachusetts and South Carolina cases are based on the theory that charitable institutions were not liable in tort for personal injuries and therefore exclude by implication liability under Workmen's Compensation Acts. Larson in his work supra, in Section 50-43, page 750 criticizes very vigorously the holdings in this line of cases. He said:

''The acceptance of this argument in the early days of compensation law, when the habit of treating compensation as a tort was still widespread, is not entirely surprising; but to find this reasoning repeated in 1948 is so remarkable that some analysis of the opinion seems necessary.''

He then analyses and criticizes the South Carolina opinion which was relying upon the Massachusetts opinion. To a great extent we must agree and concur in the criticism of these cases as given by Larson.

The general purpose of compensation laws is to

provide compensation for loss of earning power or capacity sustained by workmen through injuries in industry.

It is admonished on the Court in the Act for us to give the Act a liberal interpretation because it is primarily made for the injured employee who by reason of his injuries must be off from work and theoretically would probably be unable to provide the necessities of life for himself and family. These are the basic underlying principles of why we have workmen's compensation. When we take into consideration these principles then it seems to us that we would be more or less stultifying ourselves if we said that one working to repair the buildings and the grounds, etc., of an eleemosynary institution, who was hurt in doing this and had to lay off from work, could not have the small amount that workmen's compensation allows him for the necessities of life during that time because this institution should not have to pay him. It is for these reasons that it seems to us that the Legislature could and probably did have in mind this fact when they did not exclude eleemosynary institutions from the coverage of this Act. Then this institution, if it did or did not think it was covered by the Act, if it did not want to be covered by it (under Section 50-904, T.C.A.), could have given notice and not have been covered by the Act. If it had done so it would have been subject to the penalties as provided by this Section if it was liable for Workmen's Compensation as we here hold that it is.

■ The other question, that of casual employment is claimed under the exclusion given in Subsection (b) of Section 50-906, T.C.A. This Section provides:

"Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer."

In other words one covered by that quoted definition is not subject to the Workmen's Compensation Act.

The facts of this case show that the University in the necessary maintenance of its buildings, some of which were rented and some of which were used for class work and various things that are to be used around a school, had a maintenance crew, which of course they would have had to have some one to do it. In this instance these facts show that they had this maintenance crew consisting of a superintendent, assistant superintendant, painter, electrician, plumber, carpenter, all of whom were employed the year around, and it was necessary and an adjunct to the operation of this university to have this crew of men the year around. The petitioner, Smith, employee, as well as others, testified that Smith for more than 30 years had worked every year during the painting season, with the maintenance crew, painting the some 50 buildings located around this campus. During the year when this accident happened he had started his work on July 5th, and had worked every day up until he was injured early in October. The painting work that he had been working on continued for some weeks thereafter. Certainly in the first instance this is not and could not be classed as sporadic employment. It was an employment that came about every year during the season when it was best to paint these buildings.

It is said in Section 51 of Volume 1, of Larson on Compensation, that:

"Employment is 'casual' when it is irregular, unpredictable, sporadic and brief in nature. Under most statutes, even if casual, it is not exempt unless it is also outside the usual business of the employer. Under this test, most maintenance and repair activities, as well as even remodeling and incidental construction, have been held to be within the usual course of a business." P. 759.

At page 765 it is said:

"Behind all of these decisions lies one simple thought: maintenance, repair, painting, cleaning and the like are 'in the course' of business because the business could not be carried on without them, and because they are an expectable, routine and inherent part of carrying on any enterprize."

There are many authorities cited for this statement in the footnote. Frankly we very heartily agree with them and with the reasoning and think that it meets justice, logic and a correct legal conclusion under our statute. See *Mashburn v. Ne-Hi Bottling Co.*, 191 Tenn. 135, 229 S.W.2d 520, 232 S.W.2d 11.

As we said above, we think this the logical and correct conclusion to reach. It is for these reasons that we affirm the judgment of the Chancellor.