The Travelers Insurance Company and Howard J. Johnson d/b/a Smoky Mountain Market, Plaintiffs in Error,

*v.*

Dora Lee Dozier, Defendant in Error.

410 S.W.2d 904.

(*Knoxville,* September Term, 1966.)

Opinion filed December 30, 1966.

FRED H. CAGLE, JR., of counsel, FRANTZ, McCONNELL & SEYMOUR, Knoxville, for plaintiffs in error.

HARRY J. BRYANT, Knoxville, for defendant in error.

Mr. Justice Dyer delivered the opinion of the Court.

This is a Workmen's Compensation case presenting the issue of whether the deceased employee was a casual employee within the meaning of T.C.A. 50-906(b). The trial judge, finding deceased employee was not a casual employee, awarded benefits to the widow. The employer, Howard J. Johnson, and his insurance carrier have appealed.

The facts necessary to note are as follows: Employer owns and operates a grocery store in Knoxville, Tennessee known as Smoky Mountain Market. Employer had this building painted upon completion in 1959 and again in 1962. Desiring again to have this building painted employer in May 1965 contacted one, Frank Massengill, to do the painting. Massengill obtained deceased employee as his partner in painting the building. These two men agreed to paint the building on an hourly wage basis and to keep their own time. Employer furnished the paint and directed where and how many coats to apply to any particular part of the building. Regular employees of the market were not at this time or on prior occasions used in painting the building. On the first day at work deceased employee lost his life in a fall from the roof of this building.

Under our Workmen's Compensation Statutes casual employment is not covered and such is defined by T.C.A. 50-906(b) as follows:

Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation of the employer. T.C.A. sec. 50-906(b)

The first reported case on casual employment as same is defined in T.C.A. 50-906(b) in Tennessee is *Murphy v. Gaylord*, 160 Tenn. 660, 28 S.W.2d 348 (1930). In this case the employer was the owner of a garage which would make his usual course of business the repair of automotive vehicles. The employee was injured while reconstructing the (garage) building and this court held he (employee) was not, at the time of the injury, employed in the employer's usual course of business. Stated in another manner the employer, in reconstructing his building was not pursuing his "usual course of business" as this phrase is used in T.C.A. 50-906(b).

The following year in *Gibbons v. Roller Estates, Inc.*, 163 Tenn. 373, 43 S.W.2d 198 (1931) this Court applied the same reasoning in the *Murphy* case to a painter's helper injured while painting an office building operated by the employer. The court also noted, if the employee be employed in the usual course of employer's business, then the length of time the employee has worked would be immaterial.

In *Parks v. E. M. Carmell Co.*, 168 Tenn. 385, 79 S.W.2d 285 (1935) this court noted the holding in the *Gibbons* and *Murphy* cases to be that "* * * compensation was denied on the ground that the injury was suffered in an employment which was not a part of the regular business of the employer, but was collateral and incidental thereto."

This court in *Dancy v. Abraham Bros.*, 171 Tenn. 311, 102 S.W.2d 526 (1937), with one Justice dissenting, applied the reasoning of the *Murphy* and *Gibbons* cases to an employee injured while constructing a building to house a sprinkler system used at employer's plant where employer's usual course of business was packing meat and curing hides. The court noted this employer did not, by a department for that purpose or through its own employees, attempt to do the type of work being done by the employee at the time of the injury; which would be evidence to support a finding this carpenter work was not in the usual course of employer's business. This court in support of the holding such employment was casual cited *Gibbons v. Roller Estates, Inc.*, and *Murphy v. Gaylord*, supra.

The gist of the holding in the *Murphy Gibbons, Parks* and *Dancy cases* is stated in *United States Rubber Products Co. v. Cannon*, 172 Tenn. 665, 113 S.W.2d 1184 (1938) to be: that an employee engaged under a contract of employment for the direct and exclusive purpose of repair or construction work (where the employer is not a contractor or builder) is a casual employee as not being employed in the usual course of employer's business. This case (U. S. Rubber) excludes from this holding regular and general employees employed in the usual business of employer, who happen to be at the time of the accident, engaged, at the direction and under the supervision of employer, on work of a repair or construction character. The employee in this case (U. S. Rubber) was hired as a common laborer with duties as directed to help keep the premises attractive, load and unload freight cars. This type of employment was in the usual course of employer's business. This court found

even though the employee, at the time of the injury, was unloading material, at the direction and under supervision of employer, to be used in construction; such would not make him a casual employee under the statute.

*Brademeyer v. Chickasaw Bldg. Co.,* 190 Tenn. 239, 229 S.W.2d 323 (1950) involved an employer in the business of renting offices to the public in a building owned by the employer. The employee was hired to wash these windows about every sixty days. This Court, reversing a finding the employee was a casual employee, distinguished this case from *Gibbons v. Roller Estates,* supra in the following manner. The painting in the *Gibbons* case was in the nature of repair or permanent improvement while in the *Brademeyer* case window washing was not a repair or permanent improvement but a part of the necessary services rendered the tenants of the building.

*Harper v. Grady Counce & Son,* 194 Tenn. 279, 250 S.W.2d 371 (1952) involved an employer in the business of operating an automobile garage and selling automobile and farm implements. The employee, by trade a plumber, was engaged to do a particular plumbing job. Employee held to be a casual employee under authority of *Murphy v. Gaylord,* supra; *Dancy v. Abraham Bros.,* supra and *Gibbons v. Roller Estates,* supra. In 1963 this court in *Federated Mutual Imp. & Hdw. Co. v. Shoemaker,* 211 Tenn. 523, 366 S.W.2d 129 approved the holding in this *Harper* case.

In *Smith v. Lincoln Memorial University,* 202 Tenn. 238, 304 S.W.2d 70 (1956) the employee, employed for the sole purpose of painting buildings owned by the employer, was injured in the course of this work of painting. The employer, with a large number of buildings, had

a regular maintenance department having among its duties painting of these buildings, which was evidence to support a finding the employer in painting these buildings was acting in the usual course of its (employer) business. This fact of having a regular maintenance department charged with doing this type of work distinguishes this case from *Murphy v. Gaylord; Gibbons v. Roller Estates, Inc.; Dancy v. Abraham Bros.; Harper v. Grady Counce & Son;* supra.

*Armstrong v. Spears,* 216 Tenn. 643, 393 S.W.2d 729 (1965) involved an employee injured while painting farm buildings. The injured employee was hired for the sole purpose of painting these buildings. The fact employer used regular employees in painting these buildings was evidence to support a finding the employer in painting these buildings was acting in the usual course of his (employer) business. This is in effect the same holding as in *Smith v. Lincoln Memorial University,* supra.

■ On the issue of casual employment this statute prescribes a unitary and exclusive test which is whether, at the time of the injury, the employee was employed in the usual course of trade, business, profession or occupation of the employer. The word "usual" is significant and in the context used here is practically synonymous with the word "regular". The significance of the word "usual" as used in this statute can be seen by reading the statute with this word omitted, which would make it read, "in the course of trade, business, profession, or occupation of the employer." The statute with the word "usual" omitted takes on a different meaning than when the word is used in the statute. The word "usual" as used in this statute acts to qualify or limit

the ''course of trade, business profession, or occupation of the employer.''

■ The legislature having used the word ''usual'' we are required to give it some meaning. The most natural meaning is that it refers to the normal operations which regularly constitute the business in question.

■ ■ Under the above cases, as a general rule, an employee employed for the direct and exclusive purpose of repair and construction work (where the employer is not a contractor or builder) is a casual employee under the statute. In a manner of speaking there are exceptions to this rule. Since the usual course of employer's business is controlling the manner and way an employer operates its business determines what types of employment are within or without this statute. This is shown in *Smith v. Lincoln Memorial University,* supra where the employer (a University) had by its manner of operation made painting a part of its usual course of business.

■ Under previous holdings of this court we think the injured employee in the case *sub judice* was a casual employee under T.C.A. 50-906(b). He was employed for the direct and exclusive purpose of painting the building, which is in the nature of repair or redecorating. There is no evidence to support a finding painting was in the usual course (normal operations) of employer's business.

■ ■ The employee *sub judice* insists the question of casual employment under the statute is a question of fact, and under many previous decisions of this Court we should only examine the record to see if there is any material evidence to support the finding of the trial judge. We think it more accurate to say the question is a mixed question of law and fact. We agree each case

will have to be tested on its own facts, but the facts once found will have to meet legal conclusions applicable to such facts. Further in the case *sub judice* the facts not being in dispute the question is one of law only.

The judgment of the trial judge is reversed and the cause dismissed.

BURNETT, CHIEF JUSTICE, CHATTIN and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.