Eric JOHNSON, Plaintiff–Appellant,

v.

CHATTANOOGA–HAMILTON COUNTY HOSPITAL AUTHORITY, an entity operating Erlanger Medical Center, Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

April 18, 1988.

Jack R. Brown, P.C., Chattanooga, for plaintiff-appellant.

W. Ferber Tracy, Spears, Moore, Rebman & Williams, Chattanooga, for defendant-appellee.

## OPINION

BROCK, Justice.

The plaintiff seeks to recover benefits provided by the Workers' Compensation Act of Tennessee for an injury alleged to have arisen out of and in the course of his employment with the defendant hospital authority. The trial court rejected the claim on two grounds: (1) that the employer, the defendant hospital authority, is exempt from the provisions of the Workers' Compensation Laws of Tennessee and (2) that the statute of limitations had run on the claim asserted.

We find that the first issue is dispositive of this litigation and find it unnecessary to consider the second issue presented.

It is provided by the Workers' Compensation Act, T.C.A. § 50–6–102 as follows:

(a) In this chapter, unless the context otherwise requires:

.   .   .   .   .

(3) "Employer" includes any individual, firm, association or corporation, or the receiver, or trustee of the same, or the legal representative of a deceased employer, using the services of not less than five (5) persons for pay, and in the case of an employer engaged in mining and production of coal, one (1) employee for pay. If the employer is insured, it shall include his insurer, unless otherwise herein provided; ....

Also pertinent here are the following provisions of the Workers' Compensation Act, to-wit:

T.C.A. § 50–6–106. Employment's not covered.—The Worker's Compensation Law shall not apply to:

.   .   .   .   .

(5) The state of Tennessee, counties thereof and municipal corporations; pro-

vided, however, that the state, any county, or municipal corporation may accept the provisions of this chapter by filing written notice thereof with the said division under the commissioner of labor, at least thirty (30) days before the happening of any accident or death, and may at any time withdraw the acceptance by giving like notice of the withdrawal. . . .

The rule of construction to be followed by courts in interpreting the Workers' Compensation Act of this State is set out in T.C.A. § 50–6–116 as follows:

Construction of chapter.—The rule of common law requiring strict construction of statutes in derogation of common law shall not be applicable to the provisions of the Workers' Compensation Law, but the same is declared to be a remedial statute which shall be given an equitable construction by the courts to the end that the objects and purposes of this chapter may be realized and attained.

The defendant authority is the creature of the Legislature resulting from the enactment of chapter 297, Private Acts of 1976, as amended by chapter 125, Private Acts of 1977. Section one of that charter legislation provides:

A governmental Hospital Authority to be known as the Chattanooga–Hamilton County Hospital Authority, is hereby created and established for and on behalf of Hamilton County, Tennessee, for the purpose of performing a governmental function by operating Baroness Erlanger Hospital and T.C. Thompson Children's Hospital and such other similar or associated hospitals and existing health centers deemed appropriate to be operated by said authority as sole operator for the purpose of providing health care facilities and programs for the residents of Hamilton County, Tennessee.

Highly material also to the determination of this case are sections 18 and 19 of the charter legislation, which are as follows:

SECTION 18. The authority is hereby declared to be a public instrumentality acting on behalf of the county, but without the power of eminent domain, and in that connection to be fulfilling a public

function, and the authority and all properties at any time owned by it and the income therefrom and all bonds or notes issued by the authority and the income therefrom shall be exempt from all taxation in the State of Tennessee. Also, for purposes of the Securities Law of 1955, compiled as Sections 48–1601 through 48–1648, Tennessee Code Annotated, and any amendment thereto or substitution therefor, bonds or notes issued by the authority shall be deemed to be securities issued by a public subdivision of the State of Tennessee.

SECTION 19. The authority shall be a public nonprofit corporation and no part of its net earnings remaining after payment of its expenses shall inure to the benefit of any individual, firm or corporation.

■ It is our conclusion that the quoted sections of the charter legislation clearly indicate that this authority is such a subdivision of the state and county as is contemplated by the exemption provision of T.C.A. § 50–6–106(5) hereinabove quoted. As such, it is freed of the obligations imposed by the workers' compensation laws of this State and its employees cannot acquire any rights under those laws unless and until the authority decides to elect to operate under the workers' compensation laws as provided by said paragraph 5 of T.C.A. § 50–6–106. We therefore affirm the decision of the chancellor dismissing the plaintiff's complaint on the ground that the defendant is exempt from the workers' compensation laws of this State.

■ In our view the plaintiff's reliance upon the decision of this Court in *Smith v. Lincoln Memorial University*, 202 Tenn. 238, 304 S.W.2d 70 (1957) is misplaced. Clearly the employer in that case, Lincoln Memorial University, was not a governmental instrumentality or "public instrumentality acting on behalf of the county" entitled to be exempted from the workers' compensation law under the statutory provisions above quoted, but was, as held by the Court, a charitable educational institution operating under a welfare charter and, as such, was not entitled to the exemption.

As this Court noted, "It seems to us ... that if the Legislature intended to exclude eleemosynary institutions from the workings of the Workmen's Compensation Law then they would have said so." 304 S.W.2d at 72. Likewise, in our view the decision of the Arkansas Court in *Muse v. Prescott School District*, 233 Ark. 789, 349 S.W.2d 329 (1961) does not support the plaintiff's position in this case. It was there held that a school district was a political subdivision and, as such, was excluded from the provisions of the Arkansas workers' compensation statute. We have considered other authorities cited by the plaintiff but find that none of them would support a contrary result in the case at bar. Even exemption legislation is to be given a reasonable construction and when the legislative intent to exclude from coverage of the Workers' Compensation Act is clear, that intention must be obeyed. We find such legislative intent displayed in the language which we have quoted herein.

The decree of the chancellor is affirmed and costs incurred upon this appeal are assessed against the appellant and surety.

HARBISON, C.J., and FONES and DROWOTA, JJ.

HERSCHEL P. FRANKS, Special Judge, dissents, see separate opinion.

HERSCHEL P. FRANKS, Special Judge, dissenting.

The statutory exceptions to Workers' Compensation coverage, as interpreted by the majority, would read:

T.C.A., § 50-6-106. *Employments not covered*—The Workers' Compensation Law shall not apply to:

.    .    .    .    .

(5) The state of Tennessee, counties thereof and municipal corporations; [and public not for profit corporations].

The majority's construction of the statute does not comport with time honored rules of construction. "In order not to defeat the purpose of the legislation, the court must strictly construe exceptions to that purpose, and give effect and meaning to every word in the body of the statute."

*City of Kingsport v. Quillen*, 512 S.W.2d 569, 573 (Tenn.1974). It is generally held that courts are without authority to create exceptions to the provisions of a statute which are not made by the Act itself and, while exceptions may be implied by courts where the exceptions are necessary to give effect to the legislative intent, such exceptions must appear plainly from the express words or necessary intendments of the Act. 73 Am.Jur.2d, *Statutes*, § 314.

The majority's conclusion that the authority is "a subdivision of the state and county" is a forced classification and cannot withstand analysis. The Act creating the hospital authority plainly states the authority "shall be a public non-profit corporation", which fits into neither the definition of a county nor municipal corporation. In *Chattanooga, Etc., v. City of Chattanooga*, 580 S.W.2d 322 (Tenn.1979), this court recognized the enabling Act and its ratification was "the autonomous establishment of the Hospital Authority, ..."

The court rejected an effort to equate a utility district denominated as a quasi-public corporation with a municipal corporation in *Fountain City v. Knox County*, 203 Tenn. 26, 308 S.W.2d 482 (1957). As a corollary to that holding, the public non-profit corporation before the court should not be held equivalent to a county since counties are denominated "quasi-corporations". *Burnett v. Maloney*, 97 Tenn. 697, 37 S.W. 689 (1896).

The majority principally relies on the provision stating the authority is "fulfilling a public function". Discharging a public function should not be the litmus test since, in this age of so-called privatization, private corporations are fulfilling numerous public functions. Would the court hold such corporations fall within the statutory exclusion? I think not.

The characteristics accorded to the authority by the Act clearly distinguish it from the state, the county and municipal corporations; in fact, its attributes identify it more closely with a private business than with any of the entities excluded. Section 6 of Chapter 125, Private Acts of 1977,

gives the authority, in addition to the control and operation of hospitals, broad powers to purchase, construct and lease professional office buildings, ancillary residence facilities, and data processing facilities "including all real and personal properties which the Board of Trustees may deem necessary in connection therewith and regardless of whether or not any such facilities shall then be in existence".

In my view, the legislature imbued the authority with two characteristics which strongly suggest the legislature did not intend to equate the authority with either the state, county or a municipal corporation as it relates to Workers' Compensation coverage.

First, the corporation was given the ability to make profits[1] restricted only by the realities of the market place. One of the reasons often given for making compensation coverage discretionary rather than mandatory is that financial resources are not available to governmental entities which operate solely on tax revenues for the purchase of such insurance. *See Adams v. Petal Municipal Separate School Systems*, 487 So.2d 1329 (Miss. 1986).[2]

The second distinguishing characteristic is the corporation is governed by trustees which this court has said "is not a county office ... but rather an office of an independent governmental entity", *Chattanooga, Etc.*, at 329, as contradistinguished from the state, counties and municipal corporations, which are governed and controlled by officials elected at the ballot box. The eleven trustees are appointed by a panoply of public officials ranging from a collegian appointment by the Hamilton County Legislative Delegation to an appointment by the two Hamilton County Chancellors. Their terms are staggered and their service is limited to eight continuous years. This scheme essentially insulates the trustees from direct political pressures, whereas state, county and municipal employees and their supporters can mount political campaigns for or against elected governing officials to bring about acceptance of the Workers' Compensation Law. Absent external pressures, the issue of whether a business driven by the profit motive will voluntarily procure workers' compensation coverage for its employees was settled in 1919 by the General Assembly when it enacted the Workers' Compensation Law.

Finally, excepting this corporation from the Workers' Compensation coverage is against the overwhelming legislative trend across the nation and to the extent the legislature has acted in Tennessee since the passage of the Act in 1919. Forty-eight states now have compulsory Workers' Compensation coverage for some or all public employees. Larson, *Workmen's Compensation Law*, vol. 1C, § 56.10. By Acts 1943, chapter 120, the Tennessee legislature removed the exemption of common carriers and no new exemptions have been added by legislative action.

Legislative intent to exclude neither appears plainly from the express words nor the necessary intendments of the Act, and the court should not engraft another exception to the Workers' Compensation Law.

---

1. The Act provides for an annual appropriation from the county for reimbursement for indigent care rendered by the hospital.

2. The Mississippi Supreme Court held the unavailability of "financial resources" was the basis for legislation exempting school district employees from mandatory Workers' Compensation coverage in response to a charge that the employees were being denied equal protection of the laws. The court concluded: "Private industries have a product in which they can and do incorporate the cost factor of this insurance."