CRANE CO. *v.* JAMIESON.

(*Knoxville,* September Term, 1950.)

Opinion filed March 9, 1951.

42

C. A. Noone, of Chattanooga, for appellant.

Cardinal Woolsey, Williams & Williams, and Dixon & Dixon, all of Chattanooga, for appellee.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This is the second appeal of this case to this Court. The case presents a petition for an award under the Workmen's Compensation Act. In our former opinion reported in 188 Tenn. 211, 217 S. W. (2d) 945, we held Petitioner entitled to an award for permanent partial disability, and remanded the case for proof of the amount to be awarded under Code Sec. 6878(c), as follows: "In all other cases of permanent partial disability not above enumerated the compensation shall be fifty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition subject to a maximum of sixteen dollars per week. Compensation shall continue during disability, not, however, beyond three hundred weeks."

On the remand the Trial Judge found:

"Prior to accident petitioner's average weekly wages was $35.13.

"Since the injury she has been able to earn $18.00 per .week. In this connection I feel that transportation charges to and from the job as well as laundry expenses paid by petitioner would fairly offset the tips and meals she received above her wages. Hence I believe it just to her to hold that $18.00 per week is a fair earning to

be used as a basis for fixing her compensation in this case. This makes a difference of $17.13, sixty per cent of which is $10.28. Petitioner worked 13 weeks for Crane Company after injury, making an average weekly wage of $29.28. Hence this number of weeks should be deducted from the maximum number of weeks of statutory compensation.

"Computation: Average weekly wages .........$  35.13
Wages able to earn after accident .............   17.13
60% of $17.13 ...............................   10.28
300 weeks less 13 weeks
Judgment 287 weeks at $10.28
Total  .................:.....................$2950.36
Decree accordingly.                    Miller, Judge.''

To this finding of the Trial Judge, the Defendant preserved exceptions and has perfected an appeal which presents the following two questions:

(1) The Court erred in failing and refusing to consider meals and tips when determining Petitioner's earning capacity, and

(2) The Court erred in failing and refusing to deduct from the compensation allowed, a period of 10 weeks when Petitioner was unemployed on account of a tumor operation which was not related to her compensable injury.

Though adroitly phrased and argued to present a proposition of law, the first assignment is, in reality, no more than a question of fact which might be re-worded to say: Was there material evidence to support the finding of the Trial Judge, that meals and tips should not be included in adjudging the earning capacity of the employee under her partial disability?

Under the definition of ''Average weekly wages'', Code Sec. 6852(c), it is provided: ''Wherever allowances

of any character made to an employee in lieu of wages *are specified as part of the wage contract,* they shall be deemed a part of his earnings."

In the present case, it is testified both by the Petitioner and her employer at the tourist camp, and it is clear from the exhibit to the employer's testimony, that meals and tips were not a part of the wage contract and were not, therefore, to be considered by the Court as a part of "Average weekly wages" as defined in the Code.

To support the first assignment as a proposition of law, Defendant cites and relies only on the decision of this Court in *Moss* v. *Aluminum Co. of America,* 152 Tenn. 249, 276 S. W. 1052. We find that case neither relevant nor controlling for the following reasons:

(1) The only question presented was whether "an attendance cash bonus" was part of "Average weekly wages" Code Sec. 6852(c), and finding that the bonus was specifically made a part of the wage contract, the Court held that it was a part of the average weekly wages.

(2) No question of "tips" which are gratuities paid, not by the employer, but by third persons, was decided.

(3) No question of compensation other than money was presented.

To establish the credit due the employer in making the award, the Act provides that the compensation shall be 60% of the difference between "the wage" of the workmen before and after the injury. Code Sec. 6878(c). If the meaning of "wage" is not extended by the special wage contract, Code Sec. 6852(c), supra, then it is to be construed as having its normal and ordinary meaning, *Sanford Realty Co.* v. *City of Knoxville,* 172 Tenn. 125, 110 S. W. (2d) 325, which is equivalent to wages, and defined as: "Pay given for labor, usually manual or

mechanical, at short stated intervals as distinguished from salaries or fees." Webster's New International Dictionary.

And further, under that authority, we think that "tips" are fees, and meals are not "pay", unless made so by a specific term of the wage contract, Code Sec. 6852(c), supra.

■ ■ Accordingly, both for the reason that there is material evidence to support the finding of the Trial Judge with regard to meals and tips, and also for the reason that under a proper construction of "wage" as used in Code Sec. 6878(c), "meals and tips" were not a part of the wage contract in the present case, the first assignment of error is overruled.

■ As to the second assignment, one of the primary purposes of the Workmen's Compensation Act was to provide for a prompt payment of compensation to an injured employee after an injury. On account of the controversy in the present case and the appeal by the employer to this Court, payment of compensation has been delayed for more than the "statutory weeks" on which the compensation is to be based. It was not in the contemplation of the Legislature that the employer's credit on an award should be fixed after delaying the award, for example, for 300 weeks, and making the final award after deducting such amount as the employee had actually earned in his partially disabled condition. So to construe the Act would do violence, both to the purpose of the Act and its language, which directs the Trial Judge to make a prospective estimate, not of actual earnings, but of that amount that the injured employee "is able to earn in his partially disabled condition." The meaning of this clause, too, is to be given a liberal construction in favor of the employee, *Maxwell* v. *Beck*,

169 Tenn. 315, 87 S. W. (2d) 564. The language of the Act and its application here, compel us to conclude that the employer is entitled to credit, based on the employee's ability to earn, not on actual earnings, and that the Trial Judge correctly ignored the 10 weeks lost on account of the tumor operation.

For the reasons stated, we agree with the result reached by the Trial Judge. The assignments of error are overruled and the judgment is affirmed.

NEIL, C. J., dissents.