FILED
Mar 17, 2022
09:37 AM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**COURT OF WORKERS' COMPENSATION CLAIMS**
**AT JACKSON**

| | | |
|---|---|---|
| ESTATE OF JERRY TRULL, | ) | Docket No.: 2019-07-0593 |
| Employee, | ) | |
| v. | ) | |
| SETCO AUTOMOTIVE, | ) | State File No.: 6640-2019 |
| Employer, | ) | |
| and | ) | |
| TRAVELERS PROPERTY & | ) | Judge Thomas Wyatt |
| CASUALTY CO. OF AMERICA, | ) | |
| Carrier. | ) | |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing on March 9, 2022, in which the Estate of Jerry Trull sought permanent disability benefits that accrued before his non-work-related death. Setco Automotive argued that it owes no benefits because Mr. Trull's back injury is not work-related and, if it were, the injury failed to result in impairment. For the reasons below, the Court awards the Estate permanent disability benefits that accrued before Mr. Trull's death.

### History of Claim

During his more than forty years working at Setco and its predecessors, Jerry Trull reported four work-related back injuries. He settled a 2001 back claim based on forty-five percent disability to the body. Afterward, he had bad days with his back and periodically missed work due to back pain. His transfer to a forklift-driver position in 2012 accommodated his back pain because it required less lifting and bending than his other jobs at Setco.

Mr. Trull also reported back injuries in 2016, 2017, and January 2019. He selected Dr. Vince Tusa for treatment after each injury. In 2017, Dr. Tusa ordered an MRI that showed degenerative changes throughout the lumbar spine.

1

Mr. Trull was sixty-four years old when he injured his back again in 2019. Dr. Tusa reported that he injured his back moving heavy buckets of paint. He also noted reports of back pain without radicular symptoms, which matched the reports from the previous injuries. Dr. Tusa testified that the 2017 MRI and one taken after the 2019 injury showed "osteoarthritis or an aging of the spine that he had back from 2001."[1] He diagnosed the 2019 injury as a "strain of muscle, fascia and tendon of [the] lower back."

Dr. Tusa testified that Mr. Trull's back was at the limit of what it could do even before the 2019 injury occurred. However, he consistently returned Mr. Trull to work without restrictions. After his final visit with Mr. Trull for the 2019 injury, he noted: "there is nothing that he can do safely out there, and he is putting himself and others in jeopardy" by working. He noted that Mr. Trull became tearful when he heard this but later testified that Mr. Trull was unmotivated to go back to work. He also referred Mr. Trull to orthopedist Dr. Kyle Stephens, and Setco accepted the referral.[2]

Mr. Trull saw Dr. Stephens in February 2019 and complained of back pain that was more severe than his pain before the injury. Dr. Stephens diagnosed a lumbar strain, ordered physical therapy, and imposed work restrictions. He kept the restrictions in place and ordered more physical therapy after a second visit. On April 16, Dr. Stephens released Mr. Trull to return to work without restrictions. He completed a Final Medical Report on April 18 assigning zero percent impairment and stating that he did not anticipate future treatment.

Mr. Trull returned to Dr. Stephens on April 25, reporting that Setco assigned him to custodial work that made his back hurt. Dr. Stephens diagnosed a recurrent lumbar strain, reinstated restrictions, and ordered more physical therapy. He ordered an MRI and additional physical therapy in May. He released Mr. Trull to work without restrictions on July 1 after reporting that the MRI showed degenerative changes.

At an August visit, Mr. Trull reported a return of his back pain. Dr. Stephens again diagnosed lumbar strain, ordered more physical therapy, and took him off work for six weeks. He again kept Mr. Trull out of work after a September visit and ordered six more weeks of physical therapy.

Dr. Stephens last saw Mr. Trull on November 5. He noted continuing back pain and kept Mr. Trull off work pending a functional capacity evaluation.[3] He also made a referral to neurosurgeon Dr. John Brophy.

Regarding diagnosis, Dr. Stephens testified that "Mr. Trull's symptoms seemed to

---

[1] All physicians and Mr. Trull testified by deposition.
[2] Mr. Trull did not select Dr. Stephens from a panel, thus the presumption of correction does not apply to his opinions.
[3] This examination was not performed.

be primarily back pain related or axial spine related[.]" He also testified that the 2019 injury just increased the pain from Mr. Trull's pre-existing spinal conditions. Dr. Stephens testified that he assigned the rating of zero percent under the Sixth Edition of the *AMA Guides,* without stating the section he used to calculate the rating.

Mr. Trull saw Dr. Brophy once, in December 2019. He noted that Mr. Trull reported back pain into the right superior buttocks. Dr. Brophy testified "yes" to a question whether, on exam, Mr. Trull showed "axial back pain and not any sort of radicular component." Dr. Brophy interpreted the 2017 and 2019 MRIs to reveal degenerative changes without evidence of a herniated disc or nerve root compression. He did not recommend surgery or restrict Mr. Trull's activities.

Mr. Trull continued to work at Setco while treating his back. When he could not work, he received temporary disability benefits of $447.60 per week. During this time, Setco assigned him to jobs, such as mopping and cleaning walls, that kept him on his feet. Mr. Trull asked to return to his forklift job because the light-duty positions caused more pain. Setco did not honor this request even though Mr. Trull qualified by seniority for the forklift job under the terms of the applicable collective bargaining agreement.

Setco terminated Mr. Trull in January 2020 for mental and physical incapacity, providing a separation notice listing termination for "lack of work," so he could draw unemployment. Mr. Trull never went back to work.

Mr. Trull filed this action seeking permanent total disability benefits. He argued that the forklift job at Setco was the only job he could perform at his age and with his sixth-grade education and numerous physical limitations. After Mr. Trull died from a non-work-related cause in March 2021, the Court substituted his Estate as the party-in-interest. The Estate argued that the date of maximum medical improvement is November 5, 2019, the last date Dr. Stephens saw him. Thus, the Estate claimed entitlement to permanent disability benefits accruing between November 5, 2019, and the date of Mr. Trull's death.

Setco relied on the testimony of Drs. Tusa, Stephens, and Brophy to prove that Mr. Trull did not sustain a compensable permanent injury.

In contrast, the Estate submitted the testimony of Dr. Samuel Chung, a physical medicine and rehabilitation physician. Mr. Trull saw Dr. Chung in November 2019. He took a history, performed a physical examination, considered records documenting Drs. Tusa's and Stephens's treatment, and reviewed MRI results.

Dr. Chung's exam revealed back pain; one-plus loss of the right Achilles reflex; decreased range of motion on side-bending, rotation, and extension; an antalgic gait as weight-bearing increased; and pain on palpation. He diagnosed a lumbar sprain/strain with discogenic pain. Dr. Chung explained that discogenic pain occurs when an inciting event

3

causes the nucleus pulposus of an already degenerated disc to escape into the interior of the disc. He clarified on cross-examination that the MRIs of Mr. Trull's spine were not sufficiently sensitive to show the anatomical cause of his discogenic pain.

Dr. Chung said that lifting buckets of paint at Setco caused a permanent sprain/strain and assigned a permanent impairment rating of three percent to the whole body under Table 17-4 of the Sixth Edition of the *AMA Guides*. He testified that Mr. Trull fell into a Class 1 impairment for: "Documented history of sprain/strain type injury with continued complaints of axial and/or non-verifiable complaints and similar findings documented in previous examinations and present at the time of examination." He did not change his opinion when, on cross-examination, Setco asked him to consider that the *AMA Guides* did not provide a rating for disc degeneration shown on imaging studies.

In addition to its medical experts, Setco presented the testimony of Dr. Robert Kennon, a vocational expert who evaluated Mr. Trull on referral from Mr. Trull's attorney. Dr. Kennon testified that, under the restrictions placed on his activities by physicians, Mr. Trull retained the physical capacity to perform between twenty to fifty percent of the jobs for which he qualified.

**Findings of Fact and Conclusions of Law**

To recover, the Estate of Jerry Trull must show by a preponderance of the evidence that Mr. Trull sustained permanent injury that arose primarily out of and in the course and scope of employment. Tenn. Code Ann. §§ 50-6-239(a)(6), 50-6-102(14) (2021). The estate must prove causation and impairment by "a reasonable degree of medical certainty." *Id*. at § 50-6-102(14)(A).

Deciding the issues here requires the Court to consider the opinions of four physicians, three submitted by Setco and one by the Estate. When faced with competing expert opinions, the Court can consider, among other things, the qualifications of the experts, the circumstances of their examinations, and the information available to each in reaching their opinions. *Lamb v. KARM Thrift Stores, LLC,* 2017 TN Wrk. Comp. App. Bd. LEXIS 212, at *7 (Jul. 26, 2017).

Setco's argument, that the preponderance of the evidence did not show that Mr. Trull sustained a compensable injury, is misplaced. Drs. Tusa and Stephens diagnosed a lumbar sprain/strain, and Setco did not challenge these opinions. In fact, it provided treatment for the sprain/strain, including months of physical therapy, and temporary disability benefits when Dr. Stephens took him off work. Thus, the Court holds the preponderance of the evidence shows that Mr. Trull suffered a compensable lumbar sprain/strain injury at Setco in January 2019.

The dispositive issue, however, is whether the preponderance of the evidence

4

proved that Mr. Trull suffered permanent impairment from the lumbar sprain/strain. Mr. Trull gave credible testimony about how the 2019 injury affected his ability to work at Setco. Dr. Stephens corroborated Mr. Trull's reports of ongoing back pain after the 2019 injury by taking him off work for extended periods of time and ordering months of physical therapy. Setco sought to discredit Mr. Trull's testimony by arguing he was disgruntled and unmotivated to return to work. However, this is rebutted by Mr. Tull's work history of more than forty years for Setco and its predecessors, the efforts he made to return to work, and the tearfulness noted by Dr. Tusa upon Mr. Tull's hearing that he might not be able to return to work.

The question, then, is what does the preponderance of the medical evidence show about the permanency of Mr. Trull's sprain/strain injury? The testimony of Drs. Tusa and Brophy did not give the Court much assistance on the permanency issue. Neither found that Mr. Trull's sprain/strain was permanent, but neither formally assessed impairment under the *AMA Guides*. Dr. Stephens assessed Mr. Trull's impairment at zero percent, while Dr. Chung assigned a three-percent whole body impairment.

In considering which medical opinion best assists the Court in resolving the permanency issue, Drs. Tusa and Stephens treated Mr. Trull on multiple occasions, while Dr. Chung only saw him once. Also, the three physicians who saw Mr. Trull between November 2019 and January 2020 each documented continuing complaints of back pain. Finally, all physicians diagnosed Mr. Trull with a lumbar sprain/strain, and Drs. Stephens and Brophy assessed that his ongoing pain was axial in nature.

Under Tennessee law, a physician giving an opinion on the permanency and impairment of an injury must use the Sixth Edition of the *American Medical Association Guides to the Evaluation of Permanent Impairment.* Tenn. Code Ann. § 50-6-204(k)(2)(A). Because of that requirement, the extent to which the record shows a physician gave an opinion consistent with the *AMA Guides* is important when considering the reliability of the opinions.

Dr. Stephens said he used the *AMA Guides* to assign Mr. Trull a zero-percent impairment rating, but neither his records nor his testimony identify the sections he used to calculate the rating. On the other hand, Dr. Chung identified the specific section and table he used in giving his opinion. That table supports the assignment of a rating for documented axial and non-verifiable complaints based on a sprain/strain injury. All the physicians who testified documented Mr. Trull's consistent complaints of back pain based on a diagnosis of lumbar strain.

Taking all the described factors into consideration, the Court holds that Dr. Chung's opinion on permanency and impairment best assists it in resolving the issues in this case. Thus, the Court holds that Mr. Trull sustained a permanent sprain/strain injury to his back that resulted in an impairment rating of three percent to the whole body under the Sixth

5

Edition of the *AMA Guides.*

The Court now considers whether Mr. Trull's permanent injury allows the Estate to recover permanent disability benefits that accrued before he died. Tennessee Code Annotated section 50-6-207(3)(A) provides, "In the case of disability partial in character but adjudged to be permanent, at the time the employee reaches maximum medical improvement the injured worker shall be paid [an original award of permanent disability benefits.]" Under the version of the law in force at the time of Mr. Trull's injury, section 50-6-207(3)(B) provided increased permanent partial disability benefits, called a resulting award, to an employee who did not make a successful return to work on the date of the expiration of the original period of compensation. This section permits an employee to receive increased benefits under a statutory formula "if appropriate."

The Supreme Court has held that the purpose of the Workers' Compensation Law is to provide prompt payment of periodic benefits to an injured worker in substitute for regular wages. *See Crane Co. v. Jamieson,* 192 Tenn. 41, 237 S.W.2d 546, 548 (Tenn. 1951); *Henson v. Lawrenceburg,* 851 S.W.2d 809, 814 (Tenn. 1993). Considering these purposes, and because the statutory language quoted above requires payment of benefits upon showing of entitlement, the Court holds that the Estate of Jerry Trull may recover the permanent partial disability benefits that accrued before the date of his death.

Before deciding the amount due, the Court must first determine the date of maximum medical improvement. The Estate argued that maximum medical improvement occurred November 5, 2019, when Dr. Stephens released him. While Dr. Stephens rated Mr. Trull for impairment in February 2019, he saw him multiple times after that date and ordered scores of physical therapy sessions. Six weeks of the physical therapy sessions occurred between September 24 and November 5.

In view of the above facts, the Court holds that Mr. Trull remained under active treatment designed to improve his injury until November 5, 2019. For that reason, the Court sets November 5, 2019, as the date of maximum medical improvement. *See Sanders v. Lodgenet Interactive Grp.,* No. M2011-0725-WC-2012, 2012 Tenn. LEXIS 64, at *14 (Tenn. Workers' Comp. Panel Feb. 10, 2012) (holding that the concepts of impairment and maximum medical improvement are intertwined but separate, and the date of maximum medical improvement occurs when it appears that an employee's injury has improved as far as possible.)

Based on the three-percent impairment rating, Mr. Trull's original award totals $6,042.60. Tenn. Code Ann. § 50-6-207(3)(A). The Court awards this amount to the Estate.

The Court further holds that the original compensation period expired on February 8, 2020, which is thirteen and one-half weeks (three percent of 450 weeks), or ninety-five

days, after November 5, 2019. Since Setco terminated Mr. Trull in January 2020, and he never returned to work after the termination, the Court holds that Mr. Trull had not made a successful return to work when the original period of compensation expired.

Thus, the Court awards the Estate increased benefits based on multipliers of 1.35 for having not made a successful return to work; 1.2 for being over the age of forty; and 1.45 for not having a high school diploma or GED. Tenn. Code Ann. § 50-6-207(3)(B). Applying the multipliers, the Court awards the estate a resulting award of $8.151.47.[4]

**THEREFORE, THE COURT ORDERS AS FOLLOWS**:

1. Setco and/or the Carrier shall pay an original award of $6,042,60 and a resulting award of $8,151.47 to the Estate of Jerry Trull, for a total payment of $14,194.07.

2. Attorney Jeffrey Boyd is entitled to an attorney's fee of $2,838.81.

3. Setco and/or the Carrier shall pay the $150 filing fee to the Clerk of the Court of Workers' Compensation Claims no later than five business days after this order becomes final.

4. Setco and/or the Carrier shall complete an SD2 form within ten days after the order becomes final.

5. Counsel for the Estate of Jerry Trull may petition the Court for recovery of discretionary costs.

6. Unless appealed, this order shall become final thirty days after entry.

**ENTERED March 17, 2022.**

_Thomas Wyatt_
_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

---

[4] The Estate argued entitlement to benefits based on permanent total disability benefits. The Court holds that the testimony of Dr. Robert Kennon negated this claim.

# APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Refiled Petition for Benefit Determination
3. Dispute Certification Notice
4. Post-Discovery Dispute Certification Notice
5. Scheduling Order
6. Suggestion of Death
7. Motion to Substitute Party Plaintiff
8. Order of Substitution
9. Order dismissing the Subsequent Injury Fund
10. Transfer Order
11. Employee's Pre-Compensation Hearing Statement
12. Employee's Witness and Exhibit List
13. Employee's Trial Brief
14. Employer's Pre-Hearing Statement

Exhibits:

1. Death Certificate
2. Medical record compilation
   - Dr. Vince Tusa
   - Dr. Kyle Stephens
   - Dr. Samuel Chung
   - Dr. John Brophy
   - Robert Kennon, Ph.D.
3. Transcript of the deposition of Jerry Trull
4. Transcript of the deposition of Dr. Samuel Chung
5. Transcript of the deposition of Dr. Vince Tusa
6. Transcript of the deposition of Robert Kennon, Ph.D.
7. Transcript of the deposition of Dr. John Brophy
8. Transcript of the deposition of Dr. Kyle Stephens,
9. Photographs of Jerry Trull

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 17, 2022.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Jeffrey Boyd<br>Employee's Attorney | | X | jboyd@borenandboyd.com<br>ataylor@borenandboyd.com<br>dmyles@borenandboyd.com |
| Richard Clark<br>Employer's Attorney | | X | rclark@eraclides.com<br>jenniferdavis@eraclides.com |

_Penny Shrum_

_____

Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

9