LUCILE MOSS *v.* ALUMINUM CO. OF AMERICA.*

(*Knoxville.* September Term, 1925.)

1. **MASTER AND SERVANT.** Bonuses held ''earnings'' within Compensation Act.

Attendance bonus paid to refiner of aluminum ore because he worked seven days each week and turned off a certain amount of work *held*, under facts, to be compensation for services and "earnings" within Workmen's Compensation Act, section 2 (c). (*Post, pp.* 251-254.)

Acts cited and construed: Acts 1919, ch. 123.

2. **MASTER AND SERVANT.** Compensation Act liberally construed.

The Workmen's Compensation Act is liberally construed in favor of the employee. (*Post, pp.* 254-256.)

Acts cited and construed: Acts 1922, ch. 615; sec. 2, subd. 9.

Cases cited and approved: Skailes v. Blue Anchor Line, 4 B. W. C. C., 16; Gray v. Richards, 120 Me., 183.

Cases cited and distinguished: Sloate v. Rochester Taxicab Co., 177 App. Div., 57; Helps v. Great Western Ry., W. C. & Ins. Rep., 199; Ciarla v. Solvay Process Co., 184 App. Div., 629.

3. **MASTER AND SERVANT.** Compensation Act held inapplicable where only question was whether bonus was part of wages.

Provision of Workmen's Compensation Act that, wherever allowances made to employee in lieu of wages are specified as part of wage contract, they shall be deemed part of earnings, has no application to case where it was not insisted that attendance bonuses to refiner of aluminum ore were made in lieu of wages; only question being whether attendance bonus was part of wages. (*Post, pp. 256, 257.*)

---

### FROM BLOUNT.

---

Appeal from the Circuit Court of Blount County.— Hon. M. H. GAMBLE, Judge, sitting by Interchange with Hon. SAM C. BROWN.

McTEER, KRAMER & QUINN, for appellant.

HOMER A. GODDARD and LINDSAY, YOUNG & YOUNG, for Aluminum Co.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a suit to recover compensation under chapter 123 of the Acts of 1919 for the death of B. J. Moss, who was killed on August 27, 1924. He was survived by his widow, Lucile Moss, and three small children. He began working for the defendant on January 12, 1924.

The only controversy is as to the amount his widow is entitled to recover. He received his pay weekly in two envelopes, one being denominated "wages" and the other "bonus." During his employment he received the following sums:

Moss v. Aluminum Co. of America.

| | | |
|---|---|---:|
| Jan. 15. | Wages ................................................$ | 10 00 |
| Jan. 22. | Wages $17.50, attendance bonus $1.75; total .......... | 19 50 |
| Jan. 29. | Wages $17.50, attendance bonus $1.75, metal bonus $4.90; total ..................................... | 24 15 |
| Feb. 6. | Wages $17.50, attendance bonus $1.75, metal bonus $2.10; total ..................................... | 21 35 |
| Feb. 12. | Wages $17.50, attendance bonus $1.75, metal bonus $4.40; total ..................................... | 23 65 |
| Feb. 19. | Wages $17.50, attendance bonus $1.75, metal bonus $2.40; total ..................................... | 21 65 |
| Feb. 26. | Wages $17.50, attendance bonus $1.75, metal bonus $3.70; total ..................................... | 22 95 |
| | | |
| Total | .......................................... | $143 25 |

His average weekly pay was $22.75.

For the petitioner it is insisted that she should recover one-half of that sum, or $11,375 for four hundred weeks.

For the defendant it is insisted that petitioner is not entitled to include the items of bonus, but is only entitled to recover one-half of the weekly wage of $17.50, or $8.75 for four hundred weeks.

The trial court held with the defendant, and entered a decree for $8.75 for four hundred weeks, and his action in so holding is made the basis of the assignment of error filed on behalf of petitioner, Lucile Moss.

The system by which defendant compensated its employees is explained in the brief of counsel for petitioner, and acquiesced in by counsel for defendant, as follows:

"The attendance bonus represents twenty-five cents per day, paid to men who work six or more days per week. If he works less than six days per week, he does not receive any attendance bonus, and if the one day a week

he loses is the day following pay day or Saturday or Sunday, he does not receive any attendance bonus. All men who work in the pot rooms, in the same class of work in which Mr. Moss was employed, after being there a certain length of time receive this attendance bonus, provided they work the six days per week, as just indicated. At the time that Mr. Moss was killed there were something like three hundred men employed in the defendant company in the same kind of work that Mr. Moss was employed at.

"As stated by Mr. B. L. Glascock, this attendance bonus is paid by the company, 'to encourage the men to put in regular time.' This attendance bonus had been put into effect by the company in July, 1923, and continued from then until after Mr. Moss was killed.

"The work that the deceased was employed in was the refining of aluminum ore into aluminum pig by means of electricity. The men employed in this work had been receiving under said conditions a metal bonus for some two or three years before Mr. Moss went to work in this department, and the receipt of such metal bonus continued until after Mr. Moss was killed. To get a full metal bonus a man must work seven days per week. If he works only six days he gets just half of the metal bonus, and if he works less than the six days per week he forfeits it all. This metal bonus depends upon the collective effort of the twelve or eighteen men who work on a certain section during any one particular week.

"When the men receive their pay, it is handed to them in two envelopes, one containing the amount which they call wages and the other the amount of the two bonuses combined. The defendant company does not set aside a

given amount of money to cover these bonuses. But such payments are figured as a part of the cost of the production of aluminum.

"The contract of employment between Mr. Moss and the company was verbal, and no one who was present and heard this contract made testified in this case. The witness Wynn testified that neither the attendance bonus nor metal bonus was paid to him in lieu of wages, and Mr. Glascock, superintendent of the Aluminum Company, states that he was not present when Mr. Moss was employed, but that it is the rule of the company to consider the contract with their employees at so many cents per hour, and in this case it was 31¼ cents, and that in cases where bonuses are paid to employees like Mr. Moss, 'we consider that an additional reward for additional effort paid voluntarily by the employer.' This witness also states that the payment of this bonus was a matter of general knowledge among the employees that were working in the pot rooms."

Section 2 (c) of the act provides as follows:

" 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury. . . . Wherever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract, they shall be deemed a part of his earnings."

While no one testified who was present when deceased was employed, we are of the opinion that the facts and circumstances, shown by the record, are such as to justify us in presuming that the company contracted to pay deceased these bonuses as a part of his compensation. We base this finding upon the fact that the agreement

of the parties was within the knowledge of the company, and it failed to disclose same; that the company paid these bonuses to deceased, and to its other three hundred employees in the pot department, each week; that the sums so paid were fixed and uniform; that the employees knew they were to receive these bonuses each week; that the company had followed this uniform system of paying bonuses for several years; that a notice as to the payment of these bonuses was posted by the company in the pot room where deceased worked. In such circumstances, had deceased sued for such bonuses as he had earned, according to such schedule, the company would not be heard to say that it had no contract with him.

An industrial corporation may, at Christmas, or upon some other special occasion, make gifts to its employees, but it is unreasonable to believe that it is going to contribute thousands of dollars each week to its employees in addition to the wages contracted to be paid.

Merely denominating these items ''bonus'' does not necessarily constitute them such. Likely the term was used to distinguish it from the regular fixed wage. These weekly bonuses were not gifts, but were compensation for services.

Giving the act a liberal construction in favor of the employee, as it is our duty to do, and keeping in mind the spirit of the act, which is to pay to the dependents of a deceased employee, for a specified time, one-half of the average weekly sum which he had been receiving as a result of his employment, regardless of the source from which same came, we feel constrained to hold that the term ''earnings'' includes that character of bonuses paid by the defendant to its employees.

In our opinion, the definition of wages contained in the act bears out this construction. It says, " 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury." The company paid these bonuses to deceased because he worked seven days each week and turned off a certain amount of work. No such contributions were made to those who failed to comply with these conditions of the company. Hence, the sums denominated "bonuses" which deceased received were paid to him as "earnings."

The construction which we have given our act is in line with the decisions in other jurisdictions construing similar acts.

In *Walker* v. *Skillman*, 38 N. J. Law J., 269, it was held that where an employer, subsequent to the contract of hiring, gave the employee $10 a month in the form of a bonus, that this was a part of his wages to be considered in determining the amount of his compensation.

To the same effect was the holding in *Skailes* v. *Blue Anchor Line* (1910), 4 B. W. C. C., 16, and *Gray* v. *Richards* (1921), 120 Me., 183, 113 A., 9.

The New York statute (Laws 1922, chapter 615, section 2, subd. 9) provides that "wages" shall mean "the money rate at which the services rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging or similar advantage received from the employer."

In *Sloate* v. *Rochester Taxicab Co.*, 177 N. Y. App. Div., 57, 163 N. Y. S., 904, and affirmed in 221 N. Y., 491, 116 N. E., 1076, it was held that, where an employee was hired at

a fixed wage, and he received tips from patrons of his employer, which were not provided for in his contract of employment, same should be included in arriving at his compensation. The court observed that in other places in the act the term "average annual earnings" was used, showing that the legislature saw no broad distinction between the word "earnings" and "wages." The court then said:

"The court should treat these tips in the same manner in which the employer and employee treat them, as a part of the compensation to be received by the employee for the services rendered the employer—a part of the wages, a part of the average annual earnings of the employee."

In *Helps* v. *Great Western Ry.* (1917), W. C. & Ins. Rep., 199, it was said: "In considering what his earnings are you are bound to consider not only his wages, but what are the sums received from and by reason of his employment, not necessarily from the employer himself, but from persons with whom he had business relations."

In *Ciarla* v. *Solvay Process Co.*, 184 App. Div., 629, 172 N. Y. S., 426, affirmed in 226 N. Y., 566, 123 N. E., 858, the court said: " ' "Wages" means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, including the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer.' . . . These bonuses were paid 'to encourage each employee to make his work as efficient and economical as possible, eliminating all waste both of material and effort.' They were paid in order to keep the men, and as wages."

Moss v. Aluminum Co. of America.

As was said by counsel at the bar, if the act were construed as contended for by the company, it could enjoy the benefits of the act without bearing any appreciable part of its burdens by paying its employees nominal wages and contributing to them large bonuses.

The provision of the act which says that, ''Wherever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract, they shall be deemed a part of his earnings,'' has no application, for the reason that it is not insisted by either party that allowances were made in lieu of wages; the only question is whether the bonus was a part of the wages.

It results that, for the reasons stated herein, the decree of the trial court will be modified to the extent of increasing the weekly compensation allowed from $8.75 to $11.375.