**Jack JONES, Plaintiff-Appellant,**

v.

**Udah CRENSHAW, and Paul A. Wortham and the Farm and Construction Company, Defendants-Appellees.**

Supreme Court of Tennessee, at Jackson.

Jan. 31, 1983.

---

4. Four of the six voting "industry members" of the Commission held General Motors franchises.

Marvin A. Bienvenu, Jr., Memphis, for plaintiff-appellant.

Robert M. Burton, Memphis, for defendants-appellees.

## OPINION

LLOYD TATUM, Special Justice.

This is a worker's compensation case. It was stipulated that the appellant, Jack Jones, was permanently and totally disabled in a compensable accident that occurred on April 9, 1980 while in the employ of the appellees, Crenshaw and Wortham. The issues presented to us require our determination of whether the trial judge properly computed the appellant's average weekly wage and whether the trial court erred in crediting the appellees with payments made for temporary total disability benefits against the award for permanent total disability benefits. We find that the Circuit Court erred in computing the average weekly wage and that recovery may be had for both temporary total and permanent total disability.

The appellant had been working for the appellees for 7 years doing "all kinds of work." The appellees operated a construction business and a farm. Appellant assisted in laying septic tanks in connection with the construction business and did odd jobs at the farm. If there was no farm or construction work for him to do, at times he would work "around the house," cutting the lawn. He did not work when the weather was bad as most, if not all, of his work was outside. When the appellees had no work for the appellant, they "sent him home." The appellant was sick for an unspecified time during the year immediately preceding the accident during which he lost an unknown number of days work. He only drew wages for working 38 weeks during the year prior to the accident.

The appellant was illiterate and kept no records for the hours he worked or the pay he received. The appellees kept no records except for the cancelled checks they paid the appellant. No social security or withholding tax was deducted from his checks. These cancelled checks indicate that the appellant was paid weekly and the evidence indicates that he was paid the minimum wage except for certain "contract work."

An accountant testified on behalf of the appellant. He computed the hours worked by the appellant each week, by dividing the Federal minimum wage into the amount of each check. Under this formula, the amount of weekly wages demonstrated that the appellant worked as much as 40 hours in only 5 weeks out of the 52 weeks immediately preceding the accident. In this 52 week period, the appellant received wages for work during 38 weeks. His total wages for the 52 weeks immediately preceding the accident were $3,304.50.

Although not supported by evidence, the trial judge found the annual wages of the appellant to total $3,500.00. He divided 52 into $3,500.00 and found the average weekly wage to be $67.33.

The term "average weekly wages" is defined by T.C.A. § 50–902(a)(3). In *White v. The Pinkerton Co.,* 155 Tenn. 229, 291 S.W. 448 (1927), this court construed the statute as providing three methods for ascertaining average weekly wages:

> "1. Where the employee has been working for the employer for as much as a year, prior to the injury, divide the total wages received by fifty-two.
>
> 2. Where the employment, prior to the injury, was less than fifty-two weeks, divide the total wages received by number of weeks employed; 'Provided, results just and fair to both parties will thereby be obtained.' "

(The third method is omitted because it has no application to this case.)

[redacted] The trial judge in computing the appellant's average weekly wage, erroneously applied the first method under the statute by dividing the total wages received by 52. Although both parties referred to the appellant's job as "full-time," we are convinced from the facts above summarized that he was legally a "part-time employee." There is no basis for a conclusion that the standard 40-hour work week was included in the employment contract and it certainly was not the employment custom or practice.

In *McKinney v. Feldspar Corporation,* 612 S.W.2d 157 (Tenn.1981), this court reiterated the now established rule that the second method of computation is applicable to part-time employees such as the appellant:

> "A computation of the 'average weekly wage' of a part time employee, such as the plaintiff, must be based upon his actual part time earnings rather than upon the basis of the standard hourly wage or the standard work week of 40 hours *Gaw v. Raymer,* Tenn. 553 S.W.2d 576 (1977); *Johnson v. Aero Mayflower Transit Company,* 221 Tenn. 219, 425 S.W.2d 757 (1968); *White v. Pinkerton Co.,* 155 Tenn. 229, 291 S.W. 448 (1927). The average weekly wage of a part time employee is found by dividing the total wages received during the year by the number of weeks during which the employee received wages."

The appellant's total wages for the 52 weeks prior to his injury were $3,304.50 and not $3,500.00 as found by the trial judge. He received wages for 38 weeks out of the 52 weeks previous to his injury. Therefore, the correct method of computing his average weekly wage was to divide 38 into $3,304.50. This establishes the average weekly wage to be $86.96 and the compensation rate to be $57.97. We find that this method of computation meets the "just and fair" provision of T.C.A. § 50–902(a)(3).

[redacted] The appellees made gifts to the appellant on four occasions in weeks that he performed no labor and received no wages. It is admitted that these monetary gifts totaled $62.50. These gifts were not "earnings" within the meaning of T.C.A. § 50–902(a)(3) and were not a part of the wage contract. The four weeks in which the gifts were made were not included in computing the number of weeks the employee received wages. The amount of the gifts were not included in computing the total wages during the year. See *Moss v. Aluminum Co.,* 152 Tenn. 249, 276 S.W. 1052 (1925).

[redacted] There is evidence that some of the larger checks paid to appellant were for "contract work" where the appellant would be paid a specified sum for performing a particular job, without regard to the time required. There was also evidence that the appellees did not supervise or control the appellant in the performance of the "contract work," but there is no evidence that the employer did not have the right to control the appellant. The burden is upon the employer to show that a claimant is an independent contractor rather than an employee. *Butler v. Johnson,* 221 Tenn. 366, 426 S.W.2d 515 (1968); *Mayberry v. Bon Air Chemical Co.,* 160 Tenn. 459, 26 S.W.2d 148 (1930). In determining whether one is an independent contractor or an employee, the

vital test is not whether the right to control was exercised, but whether it existed. *Wooten Transports, Inc. v. Hunter,* 535 S.W.2d 858 (Tenn.1976). We hold that the checks for "contract work" were wages paid that must be computed in determining the average weekly wage.

In the decree, the trial judge found that the defendants had erroneously paid the appellant 70 weeks of compensation based on a compensation rate of $87.10 per week. This error arose out of the incorrect reporting of the employer to its insurance carrier as to the amount of appellant's earnings. The decree gave the appellees credit for $2,955.40 overpayment based on the incorrect average weekly wage of $67.33 with a compensation rate of $44.88. In this case an overpayment was made and it was proper to credit the amount of overpayment against the permanent award. *Melton v. Firestone Tire and Rubber Co., Inc.,* 625 S.W.2d 713 (Tenn.1981). The decree is modified so as to reduce the credit to the appellees on the total award to the sum of $2,037.30. This sum reflects the overpayment based on the compensation rate of $57.97.

The appellant next insists that the trial court erred in subtracting 70 weeks' compensation for temporary total disability from 400 weeks' compensation for permanent total disability. We agree with the appellant that temporary total disability benefits are not to be deducted.

The leading case on this question is *Redmond v. McMinn County,* 209 Tenn. 463, 354 S.W.2d 435 (1962). In holding that compensation may be allowed for both temporary total disability and permanent total disability, this court said:

"Our Workmen's Compensation statute (T.C.A. § 50–1007(a), (b), (c), (d)), like the statutes of a number of other states, classifies compensable disabilities into these four distinct classes: '(a) temporary total disability' '(b) temporary partial disability,' '(c) permanent partial disability,' and '(d) permanent total disability.' (citations omitted.)

Each of these four kinds of disability is separate and distinct and is separately compensated for by different methods provided by the several sub-sections of § 50–1007; and each of such provisions is independent and unrelated. (citations omitted.)"

\*  \*  \*  \*  \*  \*

"Under statutes like ours, 'temporary total disability' refers to the injured employee's condition while disabled to work by his injury and until he recovers as far as the nature of his injury permits; and it is separate and distinct from any of the other four kinds of disability."

\*  \*  \*  \*  \*  \*

"Under our statute, compensations may be allowed an employee both for '(a) temporary total disability' and '(c) permanent partial disability' as a result of the same injury; *and one is not to be deducted from or credited on the other.* T.C.A. § 50–1007(a), (c). (citations omitted.) (emphasis supplied)

And it seems equally clear that, under the separate provisions of our statute (§ 50–1007(a), (d)), compensations may likewise be allowed for '(a) temporary total disability' and '(d) permanent total disability' as a result of the same injury."

The *Redmond* court held that both types of permanent disability were allowed even though they together exceeded the maximum allowable under subsection (d) of T.C.A. § 50–1007. By a subsequent amendment to T.C.A. § 50–1005, the total liability of the employer for temporary total and permanent total benefits cannot exceed the maximum compensation as specified in T.C.A. § 50–1005(b). *Bland Casket Company v. Davenport,* 221 Tenn. 492, 427 S.W.2d 839 (1968).

In *Wiseman v. E'con Mills, Inc.,* 517 S.W.2d 191 (Tenn.1974) and *Hedges Manufacturing Company v. Worley,* 223 Tenn. 102, 442 S.W.2d 624 (1969), awards for both temporary total and permanent total benefits were sustained. Although these two cases involved the "Second Injury Fund" (T.C.A. § 50–1027), we see no distinction

between a case where the employee was totally and permanently disabled by a second accident, and where he was totally and permanently disabled in one accident.

The appellees cite *Ware v. United States Steel Corporation,* 541 S.W.2d 107 (Tenn. 1976) in which this court made the statement "that the claim is for permanent partial disability and claimant is entitled to be compensated on that basis, or not at all." In the *Ware* case, this court was dealing with a question of whether an occupational disease aggravated a pre-existing heart condition that was not related to the claimant's employment. The court was not confronted with the question that is before us today. We reaffirm the holding of *Redmond v. McMinn County, supra,* with the modification that the total liability of the employer for temporary total disability and permanent total disability is limited to the maximum specified in T.C.A. § 50–1005(b).

However, we cannot determine the amount of temporary total disability to which the appellant is entitled. The judgment recites that the appellant had been paid compensation for 70 weeks prior to trial but there is no indication in the judgment or elsewhere, as to whether this compensation was for temporary total or permanent total disability. The briefs suggest that both parties might have taken this to be for temporary total disability. There is no evidence in the record concerning the amount of temporary total disability sustained by the appellant, if any. Stipulations in the record indicate that neither party contemplated this to be an issue prior to trial and the dispute apparently first arose when the final judgment was entered. We must, therefore, remand for clarification of that question.

The judgment of the trial court fixing the average weekly wage is reversed and this case is remanded to the trial court for further proceedings to determine the amount of temporary total disability sustained by the appellant, if any. Costs are adjudged against the appellees.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.