IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 3, 2025 Session

## RAUL MARTINEZ v. DAVIDS GROUP, LLC

**Appeal from the Circuit Court for Wilson County**
**No. 23-CV-517      Clara W. Byrd, Judge**
————————————————————

**No. M2025-00024-COA-R3-CV**
————————————————————

The appellee sustained severe injuries after falling off of a ladder at his job. The appellee was performing work on a building owned by the appellant when the accident occurred, and he claims the ladder was owned by the appellant. The appellant's workers' compensation policy had lapsed and was not in effect at the time of the accident. The appellee filed a common law tort action against the appellant. Following a bench trial, the trial court awarded the appellee a judgment of $471,038.36. We conclude that the trial court erred in calculating the appellee's damages for lost wages and future lost earning capacity and modify the trial court's judgment to correct such error. We also remand this case to the trial court for consideration of whether the appellee is entitled to an award of noneconomic damages. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Angello Lin Huong, Lebanon, Tennessee, for the appellant, Davids Group, LLC.

D. Andrew Saulters, Nashville, Tennessee, for the appellee, Raul Martinez.

## OPINION

### BACKGROUND

Davids Group, LLC ("Defendant") owns and operates Starstruck Farm ("Starstruck"). Starstruck is a horse farm formerly owned by Reba McEntire. When Defendant purchased Starstruck in 2019, the only structures on it were two barns and a metal garage. Defendant has since renovated those buildings, built additional structures,

and made other significant improvements to the property. Jay Wilfong, Defendant's sole member, describes Starstruck's business activities as "the growing and selling of fruits and vegetables; harvesting and making products out of timber; providing hiking trails, hosting hay rides and bonfires; dog and pet boarding; use as a wildlife refuge & sanctuary; providing spaces for RV, camping, and farm style lodging; hosting farm style weddings and indoor/outdoor dining; and occasionally hosting country and other music shows and events."

On August 31, 2023, the appellee, Raul Martinez ("Plaintiff"), filed a complaint in the Wilson County Circuit Court (the "trial court") alleging that he was severely injured while working at Starstruck. Plaintiff averred that he was "an employee, agent or servant of Defendant, employed as a maintenance worker/laborer and worked on a regular basis at" Starstruck. Plaintiff claimed that he was working on the second story of a building at Starstruck on December 2, 2022, when the ladder upon which he was standing collapsed. He alleged that Defendant negligently failed to provide a safe place to work, that the ladder was defective and constituted a dangerous and defective condition on the Defendant's premises, and that as a direct and proximate result of Defendant's negligence, Plaintiff sustained serious and permanent injuries, physical and mental pain and suffering, loss of enjoyment of life, lost earnings and income earning capacity, and substantial medical expenses. Plaintiff claimed that at the time of the accident, Defendant was required by law to carry workers' compensation insurance but did not do so. Therefore, Plaintiff brought a claim for tort damages pursuant to Tennessee Code Annotated section 50-6-406(b).

Defendant filed an answer on October 10, 2023, denied that Plaintiff was its employee, and instead averred that he "was an independent contractor who performed occasional maintenance tasks at the property known as Starstruck Farm or was an employee of another party" who "performed construction work on a Chuckwagon restaurant building that was being constructed." Defendant denied that it was required to carry workers' compensation insurance on the date of the accident, denied that it was negligent, and posited that Plaintiff had a duty of care to follow proper safety procedures and protocols to avoid injuring himself. As affirmative defenses, Defendant claimed that Plaintiff was comparatively negligent due to his purported failure to follow proper safety procedures and protocols, that Israel Martinez[1] was comparatively negligent for not properly training or supervising Plaintiff, and that Defendant was entitled to immunity pursuant to Tennessee Code Annotated section 43-39-102 because Plaintiff's injuries were a result of agritourism activity.

On September 23, 2024, Defendant filed a motion for partial summary judgment arguing that it was entitled to judgment as a matter of law because Plaintiff was not a covered employee under Tennessee's Workers' Compensation Law, codified at Tennessee

---

[1] Israel Martinez is Plaintiff's brother and worked for Defendant prior to and during Plaintiff's employment with Defendant.

Code Annotated Title 50, Chapter 6, because he was a "casual employee" and because he was a "farm or agricultural laborer." Defendant also argued that it was entitled to summary judgment because Plaintiff was unable to show that Defendant's negligence contributed to or caused his injuries, an essential element of Plaintiff's claim.

The case proceeded to a two-day bench trial in November 2024. Mr. Wilfong testified that Defendant bought Starstruck "as a farm" and now uses it for "lodging, Airbnb events," as a wedding venue, and for live music performances. He explained that Plaintiff was "engaged in construction work" and conceded that Plaintiff "was not there for agritourism business[.]" Specifically, Mr. Wilfong testified that Plaintiff "was only engaged in the project of finishing the interior of the restaurant" and was not doing farm work at the time of the accident. He stated that Plaintiff had been working on the restaurant for approximately six months prior to the accident, worked up to six days a week, clocked in and out using a timecard that was kept at Starstruck, and at the time of the accident was being paid via checks written directly to him by Defendant. Mr. Wilfong testified that Israel Martinez directed the construction work on the building; however, emails admitted into evidence demonstrate that Mr. Wilfong directed Israel Martinez as to the tasks to be completed by the workers and the order in which the tasks were to be performed. Moreover, the requested work was not limited to work on the restaurant; Mr. Wilfong instead directed Israel Martinez to have the workers complete maintenance on other structures throughout the property as well. Mr. Wilfong confirmed that he had the right to terminate Plaintiff's employment and that Defendant had filed a claim against its workers' compensation insurance policy seeking coverage for Plaintiff's injury. However, Defendant's claim was denied because its workers' compensation policy had lapsed due to non-payment.

Plaintiff was fifty-three years old at the time of trial. He testified that he began working for Defendant in May 2022, was hired to perform framing work, and never performed farm work for Defendant. In addition to framing, Plaintiff testified that he also did HVAC maintenance work for Defendant. When asked who his boss was, Plaintiff identified Mr. Wilfong, who he testified hired him and gave him directions on projects. Plaintiff explained that only Mr. Wilfong could hire and fire workers. Plaintiff testified that prior to the accident, he used Defendant's ladders, drills, and saws, including the ladder from which he ultimately fell. Plaintiff testified that at the time of the accident, the polished concrete floor of the restaurant was slippery, that he was not provided any way to secure the ladder, and that Mr. Wilfong did not require him to secure the ladder. He stated that he was injured when the feet of the ladder "slid[] out from under" him on the concrete floor, and he fell ten to twelve feet. Plaintiff explained that he had been doing framing work for approximately twelve years, was "very familiar" with using ladders, knew how to use a safety catch on a ladder, and had never fallen from a ladder prior to the accident. Plaintiff testified that he was earning about $900.00 per week on average before the accident but is now only able to earn about $200.00 per week due to his injuries from the accident.

Finally, Israel Martinez also testified that Mr. Wilfong directed the workers and had the sole authority to fire workers. He explained that Mr. Wilfong would create a list of jobs to be completed and would distribute that list to the workers directly, versus having Israel Martinez instruct the workers. He further testified that he was unsure who owned the ladder from which Plaintiff fell but that it was on Defendant's property, was used by multiple of Defendant's employees, and that Mr. Wilfong did not require that the ladder be secured while in use. Israel Martinez also stated that Mr. Wilfong did not require him to fill out an application or complete an interview when he first became an employee of Defendant.

The trial court found that Plaintiff was an employee of Defendant and that the ladder from which Plaintiff fell "was on Defendant's premises and was available for any employee to use for work on the restaurant." Because the restaurant's floor was slippery and the ladder was not secured, the trial court found that an OSHA violation had occurred and that Defendant had failed to provide a safe workplace for its employee as required by Tennessee Code Annotated section 50-3-105. Addressing Defendant's defenses, the trial court found that Plaintiff was not a farm worker because "[t]he undisputed testimony was that Plaintiff engaged in construction work . . . and ultimately did whatever construction or maintenance work was assigned to him by Defendant." The trial court also noted that "Mr. Wilfong admitted that [Plaintiff] was not a farm worker" despite Defendant's continued insistence that he was. Next, the trial court found that Plaintiff was not an independent contractor nor was he Israel Martinez's employee. The trial court also found that Plaintiff was not a casual employee of Defendant because Defendant controlled Plaintiff's work duties and Plaintiff "was engaged in maintenance of the buildings and construction of the buildings for transforming the farm into a lodging place, which was the primary business of Defendant." Instead, the trial court found that Plaintiff "was a direct employee of the Defendant." The trial court also found that section 50-6-406(b) applies because Defendant was required to have workers' compensation insurance and failed to do so, therefore Defendant was disallowed from raising the common law defenses of comparative fault, that the injury was caused by the negligence of a fellow employee, or that Plaintiff had assumed the risk of the injury. The trial court found "that there were positions taken by the Defendant and testimony given by Mr. Jay Wilfong that were simply not credible." The trial court ultimately held that Plaintiff is entitled to an award of damages and "followed the worker's compensation law" to calculate such damages, awarding Plaintiff $31,200.00 for lost wages, $281,200.00 for future lost earning capacity, $169,838.36 for reasonable and necessary medical expenses, and $20,000.00 for future medical expenses, for a total of $471,038.36. Defendant appeals.

**ISSUES**

Defendant frames its issues on appeal as:

I. Whether the trial court erred in finding [Plaintiff] was an employee rather than an independent contractor.

II. Whether the trial court erred in not finding [Plaintiff] was a "casual employee" under T.C.A. § 50-6-106(2) . . . .

III. Whether the trial court erred in not finding [Plaintiff] was a farm or agricultural laborer under T.C.A. § 50-6-106(4) and T.C.A. § 43-1-113(b)(1) . . . .

IV. Whether the trial court erred in not allowing [Defendant] to present its evidence and testimony as to the nature and extent of its agricultural and agritourism activities.

V. Whether the trial court erred in finding [Defendant] violated OSHA by failing to prevent the ladder used by [Plaintiff] from slipping and causing [Plaintiff]'s injuries.

Plaintiff raises one additional issue: "Whether the trial court erred in limiting Plaintiff's damages [pursuant to] the workers' compensation [a]ct . . . ."

**STANDARD OF REVIEW**

We review the trial court's conclusions of law de novo with no presumption of correctness. *Hargis v. Fuller*, No. M2003-02691-COA-R3-CV, 2005 WL 292346, at *3 (Tenn. Ct. App. Feb. 7, 2005) (citing *Briggs v. Est. of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997)). Because this case was tried by the trial court sitting without a jury, we review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Franklin Cnty. Bd. of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

We review evidentiary decisions based on the abuse of discretion standard. *Caldwell v. Ruby Falls, LLC*, 674 S.W.3d 899, 908 (Tenn. Ct. App. 2023). When reviewing such decisions:

> Trial courts are given wide latitude on evidentiary decisions and we will only overturn the trial court's decision upon a showing of an abuse of discretion. *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 419

(Tenn. Ct. App. 2004). "The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Id.* (citing *Crowe v. First Am. Nat'l Bank*, No. W2001-00800-COA-R3-CV, 2001 WL 1683710, at *9 (Tenn. Ct. App. Dec. 10, 2001)).

*Id.* (quoting *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013)). When reasonable judicial minds can differ concerning the soundness of an evidentiary ruling, this Court will permit the discretionary decision to stand. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999). Further, even if the trial court erred in an evidentiary ruling, the ruling may still stand if the error was harmless and did not affect the outcome of the trial. *See McAdams v. McAdams*, No. E2019-02150-COA-R3-CV, 2020 WL 4723762, at *8 (Tenn. Ct. App. Aug. 13, 2020).

## ANALYSIS

### *a.*

Generally, workers' compensation is "the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." *Byrd v. Appalachian Elec. Coop.*, No. E2017-01345-COA-R3-CV, 2018 WL 1953206, at *4 (Tenn. Ct. App. Apr. 25, 2018) (quoting *Valencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003)). Therefore, the Workers' Compensation Law requires that certain employers procure workers' compensation insurance or qualify as a self-insurer. Tenn. Code Ann. § 50-6-405(a). If an employer fails to comply with the requirements of section 50-6-405, then an injured employee may seek tort damages for the injury as if the Workers' Compensation Law had not been enacted. Tenn. Code Ann. § 50-6-406(b). In such case, "the employer, when sued, shall not be allowed to set up as a defense to the action that the employee was negligent, or that the injury was caused by negligence of a fellow servant or fellow employee, or that the employee had assumed the risk of the injury." *Id.*

However, to seek tort damages pursuant to section 50-6-406(b), the injured worker must have been an employee of the employer and not an independent contractor. "The determination of whether a plaintiff is an employee or an independent contractor is a question of law, which we review de novo with no presumption of correctness." *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 418 (Tenn. 2009) (citing *Cromwell Gen. Contractor, Inc. v. Lytle*, 439 S.W.2d 598, 600 (Tenn. 1969); *Overstreet v. TRW Com. Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008)). "[T]he burden of proving that the worker is an independent contractor rather than an employee rests on the employer." *Helton v. Lawson*, No. E2018-02119-COA-R3-CV, 2019 WL 6954180, at *8 (Tenn. Ct.

- 6 -

App. Dec. 18, 2019) (citing *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991); *Jones v. Crenshaw*, 645 S.W.2d 238, 240 (Tenn. 1983)).  "Where there is any doubt as to whether the worker is an employee or an independent contractor, the doubt must be resolved in favor of" a finding that the worker is an employee.  *Id.* (citing *Seals v. Zollo*, 327 S.W.2d 41, 44 (Tenn. 1959)).

When determining whether a plaintiff is an employee or an independent contractor, we must consider the following factors: "(a) The right to control the conduct of the work; (b) The right of termination; (c) The method of payment; (d) The freedom to select and hire helpers; (e) The furnishing of tools and equipment; (f) Self-scheduling of working hours; and (g) The freedom to offer services to other entities[.]"  Tenn. Code Ann. § 50-6-102(10)(D)(i).  However, none of these factors are determinative, and we "must examine all relevant factors and circumstances of a particular relationship in deciding whether the status of the worker is that of independent contractor or employee." *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990) (collecting cases).  Although no one factor is determinative, the Tennessee Supreme Court has recognized that

> the primary factor in determining the plaintiff's status is the right to control the conduct of the work. [*Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982)]. This Court has held that "[t]he test is not whether the right to control was exercised but merely whether the right to control existed." *Stratton v. United Inter–Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985); *Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218, 220 (Tenn. 1985). A party may have some right to control the results of the work without creating an employer-employee relationship. *See id.*; *Wright v. Knox Vinyl & Aluminum Co.*, 779 S.W.2d 371, 374 (Tenn. 1989).
>
> * * *
>
> In addition to the right of control, the right of termination has taken on "controlling significance" in our case law. *Masiers*, 639 S.W.2d at 656. "The power of a party to a work contract to terminate the relationship at will is contrary to the full control of work activities usually enjoyed by an independent contractor." *Id*.

*Lindsey*, 275 S.W.3d at 418–19.

It is undisputed that Defendant did not have workers' compensation insurance at the time of Plaintiff's injury, and Plaintiff sued Defendant for tort damages pursuant to section 50-6-406(b).  Defendant argues that the trial court erred in finding that Plaintiff was an employee of Defendant rather than an independent contractor.  The trial court, having seen and heard the testimony of the witnesses, found that "there were positions taken by the Defendant and testimony given by Mr. Jay Wilfong that were simply not credible."

Ultimately, the trial court found, in relevant part:

From the paychecks exhibited at trial, it was determined that Plaintiff earned $900.00 per week on average. . . .

The ladder used by Plaintiff on the day of the accident was on Defendant's premises and was available for any employee to use for work on the restaurant. . . .

* * *

. . . The undisputed testimony was that Plaintiff engaged in construction work including but not limited to drywall work, siding, painting, framing, had helped in the construction of a shower house and ultimately did whatever construction or maintenance work was assigned to him by Defendant. . . .

The Court rejects Defendant''s argument that [Plaintiff] was the employee of a subcontractor or independent contractor. . . . The testimony at trial revealed that Mr. Wilfong had numerous projects going on and had no architectural designs such that he was directing his employees regarding the construction of the buildings and as to the maintenance of said buildings once constructed. There was constant ongoing maintenance of the buildings such that Israel Martinez and [Plaintiff] were both providing maintenance services, which was not limited to the restaurant that was under construction. Thus, Defendant's assertion that Israel Martinez was hired as an independent contractor to construct the Chuckwagon Restaurant is found to be without merit. As Israel Martinez was a regular employee of Defendant, [Plaintiff] could not be considered to be the employee of Israel Martinez as Israel Martinez was not an independent contractor. The Court finds that Israel Martinez was a regular employee of Defendant at the time of [P]laintiff's accident.

The Court finds that [Plaintiff] was controlled by Defendant regarding his work duties. . . .

Further, the Court finds that [Plaintiff] used tools and equipment that were provided to him by the Defendant. Defendant admitted it maintained a timecard on its premises for Plaintiff to clock in and out to keep up with his hours and Plaintiff was paid an hourly wage directly by the Defendant based on the hours recorded. Jay Wilfong admitted that he directed and controlled the conduct of Plaintiff's work. Accordingly, based on method of payment, the use of Defendant's tools and the right to control the conduct of Plaintiff's

work by the Defendant, the Court finds that [Plaintiff] was a direct employee of the Defendant.

Defendant argues that it did not have the right to control Plaintiff's work and instead just gave "punch lists" of its "general goals" for the project, that Plaintiff was not required to exclusively use the tools furnished at the work site by Defendant, and that Plaintiff was free to set his own work schedule and offer his services to other entities. However, when determining whether Plaintiff was an independent contractor or employee, we must examine all of the relevant circumstances of his relationship with Defendant. *See Boruff*, 795 S.W.2d at 127. And if there is any doubt regarding such status, we must resolve that doubt in favor of finding that Plaintiff was an employee. *See Helton*, 2019 WL 6954180, at *8. We also defer to the trial court's findings as to the credibility of Defendant and Mr. Wilfong. *See Franklin Cnty. Bd. of Educ.*, 337 S.W.3d at 811. The record reflects that Defendant asserted a significant level of control over Plaintiff's work, Defendant had the right to terminate Plaintiff's employment at any time, Plaintiff was paid an hourly wage on a weekly basis, Plaintiff did not have the freedom to hire helpers, and Defendant furnished tools and equipment that Plaintiff could use to complete the work. Given the specific circumstances of this case, we affirm the trial court's holding that Plaintiff was Defendant's employee rather than an independent contractor.

*b.*

The Workers' Compensation Law does not apply to "[a]ny person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession or occupation of the employer[.]" Tenn. Code Ann. § 50-6-106(2). Defendant argues that the trial court erred by finding that Plaintiff was not a casual employee of Defendant because its "lines of business were lodging and camping, hosting wedding and music events, growing of banana trees and grapes, wood milling and furniture making, and hayrides/agritourism," and it "does not engage in construction as [a] normal part of its usual course of business."

"[A]s a general rule, an employee employed for the direct and exclusive purpose of repair and construction work (where the employer is not a contractor or builder) is a casual employee under the statute." *Travelers Ins. Co. v. Dozier*, 410 S.W.2d 904, 907 (Tenn. 1966). However, an employer may be engaged in more than one business or occupation at a time. *Black v. Corder*, 399 S.W.2d 762, 763 (Tenn. 1966) (citing *D. M. Rose & Co. v. Snyder*, 206 S.W.2d 897 (Tenn. 1947); *Mason-Dixon Lines v. Lett*, 297 S.W.2d 93 (Tenn. 1956)). Moreover, an exception to this general rule exists where the employer has historically used its employees to perform such work and in so doing has made such work a part of its usual course of business. *See Travelers Ins.*, 410 S.W.2d at 907 (collecting cases); *see also Armstrong v. Spears*, 393 S.W.2d 729, 732 (Tenn. 1965) ("Where an employer regularly employs employees in a given class of work, this may be evidence that such work is in the usual course of such an employer's trade, business or occupation."

(citing *Dancy v. Abraham Bros. Packing Co.*, 102 S.W.2d 526 (Tenn. 1937))); *see also Butler v. Johnson*, 426 S.W.2d 515, 518 (Tenn. 1968) (finding that the plaintiff was not a casual employee when he "was, at the time of his injury, performing a task usually performed by defendants' regular employees").

The facts of this case are similar to *Black v. Corder*. The defendant in that case owned and operated a combination service station and appliance store when he decided to build a retaining wall across the rear of his property and to enlarge the building housing the appliances. *Black*, 399 S.W.2d at 762. The defendant "was not experienced in construction work" and hired two men, who were "normally employed by a construction company" but were between jobs, to perform the construction work. *Id.* at 762–63. The hired workers estimated that the job would take about seventy-five days to complete; however, one of the workers was fatally injured during work. *Id.* at 763. The worker's widow sought workers' compensation benefits, and the defendant argued that the deceased worker was a casual employee whose injuries were not covered by the Workers' Compensation Law. *Id.* The trial court found that the defendant had "gone into another and separate business from his usual business" and that the deceased worker was not a casual employee. *Id.* This Court affirmed the trial court's findings and noted that, although defendant "was not regularly engaged in the construction business," the construction project he undertook "was a project of some magnitude, and while not having the continuity of an ordinary business, . . . it would require considerably more time than just a small project finished in a few hours [or] a few days." *Id.* at 765.

Conversely, in *Feathers v. Duncan*, the Tennessee Supreme Court considered its holding in *Black* before ultimately holding that construction was not part of an employer's usual course of business. 582 S.W.2d 385, 386 (Tenn. 1979). The *Feathers* defendant owned a carpeting business, purchased a building, and hired two carpenters to remodel a portion of the building into a showroom. *Id.* One of the carpenters was injured on the job and sought workers' compensation benefits; however, the defendant argued that the injured carpenter was a casual employee who was not entitled to such benefits. *Id.* The trial court concluded that the injured carpenter was a casual employee, and the Tennessee Supreme Court affirmed the trial court's conclusion. *Id.* In so doing, the High Court noted that "[i]n contrast to the *Black* case, the remodeling in [the *Feathers*] case was of the 'one shot' variety, was a small project to be finished within a few days, and [the injured carpenter] and his brother were the only carpenters employed in the project." *Id.*

Returning to the facts of this case, Mr. Wilfong testified that when Defendant purchased Starstruck, it was "just a farm, a barn, a former horse barn" and that Defendant spent "roughly" $2,500,000.00 starting in 2019 to convert sixteen horse stalls with gravel floors into "tiny-house-style lodging" and built a large outdoor gazebo with a stamped concrete floor, lighting, and a built-in sound system; thirteen A-frame lodging sites; two "restroom/shower buildings"; and the large restaurant upon which Plaintiff was working at the time he was injured. Although Defendant argues that construction is not a "normal part

of its usual course of business," the construction projects undertaken by Defendant were projects of great magnitude and took considerably more time than a small project finished in a few hours or a few days. In fact, Plaintiff had been working on the build-out of the restaurant, alongside numerous other workers, for approximately six months when the accident occurred. Like the defendant in *Black*, Defendant made these construction projects part of its usual course of business. Moreover, Mr. Wilfong testified that, on at least one occasion, he hired an employee to work specifically with Israel Martinez and the other workers that were building out the restaurant at issue in this case. This also weighs in favor of a finding that the construction of this restaurant and the other improvements upon Starstruck were part of Defendant's usual course of business.

Given these facts, we affirm the trial court's holding that Plaintiff was not a casual employee of Defendant.

*c.*

Next, Defendant argues that the trial court erred in finding that Plaintiff was not a farm or agricultural laborer, which would exempt Defendant from the requirements of the Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-106(4) (exempting from the Workers' Compensation Law "[f]arm or agricultural laborers and employers of those laborers"). Whether a worker is a farm or agricultural laborer "is determined from the character of the work he is required to perform." *McWhirter v. Kimbro*, 742 S.W.2d 255, 258 (Tenn. 1987) (quoting *Ginn v. Forest Nursery Co.*, 52 S.W.2d 141, 142 (Tenn 1932)). In making such determination, the court must evaluate the whole character of the employment and not simply the pending task nor the place where it is being performed. *Id*.

The plaintiff in *Ginn* worked for a plant nursery that grew shrubs, evergreens, and shade trees and was injured while using a shovel to dig up a shrub. *Ginn*, 52 S.W.2d at 141. The defendant argued that the plaintiff was not entitled to workers' compensation benefits because he was a farm or agricultural laborer. *Id*. During the course of his employment, the *Ginn* plaintiff "had sometimes plowed with a two-horse plow, but described his work mainly as working in the bushes, trees, and shrubs, spading them, taking them up, packing them with heavy balls of dirt around their roots, and assisting in trucking the products, packed for shipment, to the local railroad depot." *Id*. In analyzing whether the *Ginn* plaintiff was a farm or agricultural laborer, the Tennessee Supreme Court listed as examples of farm labor tilling the soil, tending to growing plants, harvesting and preparing plants for market, and delivering plant products to shipping points. *Id*. at 142. Ultimately, the High Court determined that the plaintiff was a farm or agricultural laborer. *Id*. The Tennessee Supreme Court has also held that a sharecropper is a farm or agricultural laborer for purposes of the Workers' Compensation Law when his normal work includes growing crops, planting trees and seeds, and preparing and delivering plant products for shipment. *Dills v. Tenn. Nursery Co.*, 218 S.W.2d 992, 992–93 (Tenn. 1949).

- 11 -

In this case, Defendant insists that Starstruck is a farm at which Defendant engaged in agritourism; thus, Plaintiff was a farm or agricultural laborer. However, the test is not whether some farming or agricultural activities occasionally occurred at Starstruck, but rather we must analyze the character of the work Defendant required Plaintiff to perform. *See McWhirter*, 742 S.W.2d 255 at 258.[2] As the trial court found, "[t]he undisputed testimony was that Plaintiff engaged in construction work including but not limited to drywall work, siding, painting, framing, had helped in the construction of a shower house and ultimately did whatever construction or maintenance work was assigned to him by Defendant." This is supported by the record. Moreover, on an Employer Questionnaire provided to the Tennessee Bureau of Workers' Compensation less than three months after Plaintiff's injury, Mr. Wilfong marked "not applicable (N/A)" when asked whether Defendant had any "employees that are farm or agricultural laborers." Finally, when specifically asked at trial whether Plaintiff was at Starstruck "for agritourism business," Mr. Wilfong answered "no." For these reasons, we affirm the trial court's holding that Plaintiff was not a farm or agricultural laborer for purposes of the Workers' Compensation Law.

*d.*

Defendant also argues that the trial court erred in not allowing it to present additional evidence regarding its alleged agricultural and agritourism activities. This is an evidentiary decision, which we review for an abuse of discretion. *See Caldwell*, 674 S.W.3d at 908. Defendant insists that it "was unduly prejudiced in not being able to present [its] full testimony and evidence as to the various agricultural and agritourism activities conducted on the premises in order to show [that Plaintiff] was an agricultural/farm laborer and/or a casual employee who was engaged in construction work outside the scope of [Defendant's] normal course of business activities." However, given Mr. Wilfong's express testimony that Plaintiff was not involved in Defendant's purported agricultural and agritourism activities, any additional testimony or evidence as to the nature and extent of such activities would have been irrelevant to the trial court's determination of whether Plaintiff was a farm or agricultural laborer and, thus, not admissible for such purpose. *See* Tenn. R. Evid. 401 and 402. Moreover, given our conclusion that Defendant's usual course of business included construction of the restaurant at issue and making other improvements to Starstruck, any additional testimony or evidence regarding Defendant's purported agricultural or agritourism activities would have likewise been irrelevant to the trial court's determination of whether Plaintiff was a casual worker. Finally, Mr. Wilfong testified at length about Defendant's purported agricultural and agritourism activities including harvesting and milling lumber, hosting hayrides, and growing and selling grapes, banana

---

[2] Defendant argues that Tennessee Code Annotated section 50-7-207(f)(1)(B), which provides a broader definition of "agricultural labor," applies here. However, section 50-7-207 expressly provides that the definitions therein apply for purposes of the Tennessee Employment Security Law codified at Tennessee Code Annotated Title 50, Chapter 7, whereas the Tennessee Workers' Compensation Law is codified at Title 50, Chapter 6. Therefore, the definitions provided in section 50-7-207 are inapplicable to this case.

- 12 -

trees, and corn. Any additional evidence about these activities would have been needlessly cumulative. *See* Tenn. R. Evid. 403. Therefore, the trial court did not abuse its discretion in excluding such evidence.

*e.*

Defendant next argues that "the trial court should not have allowed introduction of a violation of OSHA Regulation [1926.1053(b)(7)] to support a cause of negligence per se" because Plaintiff's complaint did not reference that regulation nor did it allege that the concrete floor in the restaurant was slippery or claim that there was a failure to properly secure the ladder from which Plaintiff fell. Accordingly, Defendant posits that Plaintiff's complaint violated Tennessee Rule of Civil Procedure 8.05(1), which requires:

> . . . Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

Defendant also argues that Plaintiff does not fall within the class of persons protected by OSHA due to his purported status as an independent contractor and not an employee. However, Plaintiff argues that Defendant failed to raise these issues before the trial court and, thus, has waived them on appeal.[3] "Under Tennessee law, issues raised for the first time on appeal are waived." *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996). To that end, Rule 6(a)(2) of the Rules of the Court of Appeals of Tennessee requires that an appellant's written argument in its appellate brief include "[a] statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded." Defendant's appellate brief does not contain any such statement, and despite diligent review, we have been unable to locate any part of the record where Defendant raised these issues before the trial court. Accordingly, these issues have been waived.

---

[3] We note that Defendant repeatedly argued before the trial court and on appeal that Plaintiff is an independent contractor for purposes of the Workers' Compensation Law, as defined by Tennessee Code Annotated section 50-6-102(10)(D)(i). However, as Defendant notes for the first time on appeal, Tennessee Code Annotated section 50-3-103(7) sets forth a separate test for determining whether a claimant is a covered employee for purposes of Tennessee's Occupational Safety and Health Act of 1972.

*f.*

Plaintiff argues on appeal that the trial court erred by applying the Workers' Compensation Law to reduce the damages awarded to Plaintiff. As discussed above, when an employer fails to comply with section 50-6-405, an injured employee may bring an action for tort damages "to be recovered as if [the Workers' Compensation Law] had not been enacted[.]" Tenn. Code Ann. § 50-6-406(b). The trial court expressly found that Defendant was required to carry workers' compensation insurance and did not do so; thus, section 50-6-406(b) applies to this case. Despite this, when calculating Plaintiff's lost wages and future lost earning capacity as a result of his injuries, the trial court "followed the worker's compensation law and determined same to be two thirds of Plaintiff's average weekly wage[.]" *See* Tenn. Code Ann. § 50-6-207. Section 50-6-207 sets forth "the schedule of compensation to be allowed employees under" the Workers' Compensation Law.

As the Tennessee Supreme Court has explained:

One of the fundamental purposes of workers' compensation law is to compensate employees for work-related injuries irrespective of fault. *See* Tenn. Code Ann. § 50-6-103(a) (1999). However, in exchange for no-fault recovery, employees have limited recovery and relinquish certain common-law rights of action against their employers which they might otherwise have had. A delicate compromise between the interests of employers and employees thus lies at the heart of workers' compensation law. *See Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984). In order to preserve this balance, workers' compensation law "constitutes a complete substitute for previous remedies in tort on the part of an employee." *Liberty Mut. Ins. Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760, 762 (1963). Consequently, with few exceptions workers' compensation law is the exclusive remedy for the work-related injuries which fall under its scope. *See* Tenn. Code Ann. § 50-6-108(a) (1999); *Liberty Mut. Ins. Co.*, 368 S.W.2d at 762. "The delicately balanced quid pro quo imposing no-fault liability in exchange for immunity from tort claims and limits on the amount of workers' compensation liability becomes illusory without a viable exclusive remedy rule." Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L.Rev. 405, 411–12 (1988).

*Lang v. Nissan N. Am., Inc.*, 170 S.W.3d 564, 572–73 (Tenn. 2005) (footnote omitted). The plain language of section 50-6-406(b) makes clear that when an employer does not comply with the requirements of section 50-6-405, an injured employee is not limited to the exclusive remedy of workers' compensation nor is the employee's recovery limited by the compensation schedule set forth in the Workers' Compensation Law. Accordingly, the

trial court erred in reducing Plaintiff's damages related to his lost wages and future lost earning capacity.

The trial court found that Plaintiff's average weekly wage prior to his injuries was $900.00 per week and that Plaintiff was unable to work for 52 weeks as a result of his injuries. Accordingly, Plaintiff's damages for lost wages equal $46,800.00. The trial court also found that Plaintiff's average weekly wage after his injuries is $200.00 per week and that Plaintiff's future wage loss will extend twelve years. Therefore, Plaintiff's damages for future lost earning capacity is $700.00 per week for 624 weeks for a total of $436,800.00. In summary, Plaintiff's combined damages for lost wages and future lost earning capacity equal $483,600.00.

The trial court also held that the Workers' Compensation Law prohibited it from awarding Plaintiff noneconomic damages, including for his pain and suffering related to his injuries. *See Lang*, 170 S.W.3d at 572 (explaining the prohibition against noneconomic damages in workers' compensation cases). However, Plaintiff's damages should have been calculated "as if [the Workers' Compensation Law] had not been enacted[.]" Tenn. Code Ann. § 50-6-406(b). Accordingly, we remand this case to the trial court to determine whether Plaintiff is entitled to an award of noneconomic damages. We do not disturb the trial court's calculation of damages related to Plaintiff's reasonable and necessary medical expenses and future medical expenses.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is modified as set forth above to correct the calculation of Plaintiff's damages for lost wages and future lost earning capacity. We remand this case to the trial court for consideration of whether Plaintiff is entitled to an award of noneconomic damages. The judgment of the trial court is affirmed in all other respects. Costs of this appeal are taxed to the appellant, Davids Group, LLC, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE